## JOHN KELLEY *vs.* WILLIAM L. LEWIS *et al.*

January Term, 1871.

1. K. charges in a bill that he loaned to L. and wife a sum of money, for which they executed their obligations and a mortgage on the property of the wife. It is answered that the debt due the plaintiff was not a debt contracted for the loan of money, but for State stocks transferred by the plaintiff to the defendants, at their nominal value, when in fact their actual value was much below the nominal value. That the object of the defendants was to raise money, and they applied to the plaintiff for such a loan. He declined loaning money, but proffered to loan State stocks as money, and their necessities were such that they were obliged to do it, but that the stocks were sold for eighty cents on the dollar. That defendants were advised that, as having applied for a loan of money and being compelled by their necessities to take depreciated stocks at their nominal value in lieu of money, the transaction would be held to be usurious and oppressive. HELD:

> That the averments in the answer, taken in connection with the charge in the bill, make the defense of usury in substance, although not very formally.

2. The act of the legislature of this State repealing the laws on usury, does not affect contracts made prior to the date thereof.

3. It is held that the following instructions, in substance, to a jury on the trial of an issue out of chancery, on a question of usury, were not erroneous: That the transaction need not be proved usurious beyond a *rational doubt;* that if the evidence showed that State stocks were *sold* by the plaintiff to the defendants in good faith, the transaction was not usurious; and the refusal to instruct the jury that before they could find the transaction usurious, it must be proved that the plaintiff intended it as such.

*See page 443.

That if the plaintiff intended to sell the State stocks, it was not usurious, and it made no difference what the defendant thought or intended, but that such sale must have been a *bona fide* sale and not a loan in disguise of a sale, and that the plaintiff said nothing to warrant the defendant in believing that it was a loan and not a sale. That the character of the transaction as usurious or not, did not depend upon the inward belief or intention of the parties, but upon the terms thereof, as made and expressed between them at the time. That it did not necessarily follow if it was a sale, that it was not usury; nor did it follow if it was a loan, that it was usury.

4. The following instruction held erroneous: "A loan of so many State bonds at par, which were under par at the time of the loan, was usury."

The bill in this cause was filed at November rules, 1866, in the circuit court of Monroe county. The plaintiff, John Kelley, alleged that in March, 1861, he had loaned, on the application of Letitia P. Lewis, wife of W. L. Lewis, to Mrs. Lewis, the sum of 5,000 dollars, and that she and her husband had executed their obligation therefor, and also had executed a mortgage for the purpose of securing the same, on certain real estate belonging to Mrs. Lewis.

The answer of Mrs. Lewis averred that the debt due the plaintiff was not contracted for the loan of money, but for State stocks transferred by the plaintiff at their nominal value, when in fact their cash or actual value was much below par. That she had received five State bonds of 1,000 dollars each. That the object of her husband and herself was to raise money, and applied to the plaintiff for such loan. He declined loaning money, but proffered to loan State stocks as money, and their necessities were such that they felt obliged to do it, but in doing so made a great sacrifice. That the actual value of the stocks did not exceed eighty cents on the dollar, at any time; two of them having been sold for eighty cents on the dollar, and the residue for seventy-seven or eight cents on the dollar. That she was advised that as the object of her husband and herself was a loan of money, which they applied for from the plaintiff, and were compelled by their necessities to take depreciated stocks at their nominal value in lieu of money, the transac-

tion would be held usurious and oppressive. In May, 1869, issues were directed to be tried by a jury, at the bar of the court, as follows:

"1st. Whether the advance of State stock, in the bill and proceedings mentioned, by the plaintiff to the defendant L. P. Lewis, was a *bona fide* sale of the same or a mere loan.

"2d. Whether the bonds and the trust deed in the bill mentioned, were or were not executed upon a usurious consideration, and this cause is continued until the next term for a trial of the issues at law herein directed."

At the September term, 1869, the jury found that the advance of stock in the bill and proceedings mentioned by the plaintiff to the defendants Lewis and wife, was a mere loan and not a *bona fide* sale; and that the bond or obligation of the trust deed was executed upon a usurious consideration. At the same term the bill was dismissed.

Kelley, by his counsel, asked the following instructions to the jury:

"1st. Before the jury can say that the transaction was usurious, it must be proved beyond a rational doubt.

"2d. If the jury believe from the evidence that John Kelley sold the State stocks to William L. Lewis, sr., and his wife, in good faith, then the transaction was not usurious.

"3d. Before the jury can find the transaction was usurious, it must be proved beyond a rational doubt that Kelley intended it as such.

"4th. If Kelley intended to sell the bonds, it was not usurious, and it makes no difference what Mrs. Lewis thought or intended.

"5th. Although Mrs. Lewis might have thought it was a loan of the bonds, yet if the jury believe from the evidence that Kelley intended to sell said bonds, then it was not usurious."

The court gave the first and second instructions, but refused the third instruction. The fourth instruction was

given with the following addition: "That such sale must have been a *bona fide* sale, and not a loan in disguise of a sale, and that Kelley said nothing to warrant Mrs. Lewis in believing that it was a loan and not a sale."

The fifth instruction was refused as asked, but given with the following addition: "That the character of the transaction, as usurious or not usurious, does not depend upon the inward belief or intention of the parties, but upon the terms of the contract as made and expressed between them at the time."

The court also instructed the jury as follows: "It does not necessarily follow, if it was a sale, that it was not usury; nor does it necessarily follow, if it was a loan, that it was usury."

"A loan of so many State bonds at par, which were under par at the time of the loan, was usury."

"That it was usury to loan either money or bonds at any greater rate of interest than six per cent."

"The fact that Kelley paid par for the State bonds would not relieve the transaction of usury if they were under par at the time of the transfer, and — the jury believe from the evidence that at the time of the advance the bonds had fallen in the market, and that the transaction was a loan and not a sale, and that Kelley's object in letting Mrs. Lewis have the bonds was to get from her more for them than their market value at that time."

The counsel for Kelley objected to the court not giving the third, fourth and fifth instructions as asked, and also to the additions thereto as made by the court, as heretofore referred to. Kelley, by his counsel, also objected to the instructions subsequently given by the court on its own motion. Kelley appealed to this court.

Hon. N. Harrison, judge of the circuit court of Monroe county, presided on the hearing of the cause.

*Hereford* and *Tebbetts* for the appellant.
*Price* for the appellees.

MAXWELL, J. The first ground of error assigned is that the court below had no power to direct such an issue, as was directed in this cause, because the answer of the defendant does not charge usury, and because if it does charge usury the cause does not come within section 10, chapter 141 of the code of Virginia; and further, that if it did fall within that section, it had been repealed at the time of the trial, by the Code of West Virginia. The averment in the bill is that Mrs. Lewis, wife of W. L. Lewis, "made application to him (the complainant) for a loan of money, and that he did make a loan of money to the said Mrs. Lewis * * * for the sum of 5,000 dollars, for the security of which she, with the said husband, then and there executed their obligation," &c. The answer of Mrs. Lewis avers that "the debt due the plaintiff was not a debt contracted for the loan of money, but for State stocks transferred by the plaintiff at their nominal value, when, in fact, their cash or actual value was much below the nominal value. The object of her husband and herself was to raise money, and applied to the plaintiff for such a loan. He declined loaning money, but proffered to loan State stocks as money; and their necessities were such that they felt obliged to do it; but in doing so they made a great sacrifice." * * * " Their actual value did not exceed eighty (80) cents on the dollar at any time. Her husband sold two of the bonds of 1,000 dollars each at eighty cents on the dollar; the other three bonds of 1,000 dollars each were disposed of through the agency of General Echols at less than eighty cents on the dollar; as she is informed and believes." * * * "Respondent is advised that as the object of her husband and herself was a loan of money, which they applied for from the plaintiff, and were compelled by their necessities to take depreciated stocks at their nominal value in lieu of money, the transaction will be held to be usurious and oppressive."

These averments in the answer, taken in connection with the charge in the bill do, in my judgment, make the defence of usury in substance, although not very formally.

If the case does not fall within section 10, chapter 141, Code of Virginia, it falls within section 4 of chapter 177 of the same Code, under which the issue might have been directed.

If the case falls within section 10 of chapter 141, Code of Virginia, the repeal of that section would not effect the case, as will appear hereafter.

The second cause of error assigned is, that at the time of the trial and judgment the law concerning usury had been repealed; that is to say, there was no forfeiture except for excess of interest. It is true that by the Code of this State no forfeitures are imposed except for excess of interest over six per centum; but this applies to contracts made since the Code took effect, because the repealing chapter of the Code provides that the repeal of a law as it before stood, except where it is otherwise provided, shall not effect any act done or forfeiture incurred. As the contract in this case was made before the Code took effect, it is governed by the law in force at the time it was made, as to any forfeitures incurred. This is an answer to the third and fourth causes of error assigned as well as to the second.

The fifth, sixth and seventh causes of error assigned relate to instructions either given or refused. It seems to me, without assigning reasons in detail, that the rulings of the court below both in giving and in refusing to give the instructions given or refused, were correct as applicable to the cause, except in giving the instruction in these words: "A loan of so many State bonds at par, which were under par at the time of the loan, was usury."

To lend is to deliver to another for use, on condition that the thing loaned, or an equivalent of the kind, shall be returned. To lend State bonds would be to deliver them to another for use on condition that the bonds loaned or other bonds of the same kind, equal in quantity, should be returned, and would not be usury. To deliver so many State bonds to another for use, on condition that an equivalent in money at the par value of the bonds should be returned, would be to sell and not to loan the bonds, and as a naked

proposition would not be usury. The language of the instruction is subject to both of these constructions, neither of which states the law correctly. I can see no error in the remaining causes of error assigned.

A great deal of stress has been laid upon the tenth assignment of error, founded on what is set up in bill of exceptions No. 5, as to what the court said to the jury. Whether what was said by the court to the jury was proper or not, does not arise in the cause, because it was withdrawn and the jury instructed to disregard what had been said.

For the error committed by the court in giving the instruction before referred to, I think the decree complained of should be reversed, with costs to the complainant, and the cause remanded for further proceedings.

BERKSHIRE, P., concurred.

JUDGMENT REVERSED.