# CHARLESTON.

Smith *v.* McMillan *et al.*

Submitted February 4, 1899—Decided April 22, 1899.

1. Usury—*Usury as a Defense.*
    The defense of usury is personal to the debtor.   (p. 578.)

·2. Usury—*Usurious Debt—Deed of Trust.*
    One who purchases land that is under a deed of trust for a usurious debt cannot set up the usury against that debt.  (p. 579 )

3. Usury—*Intervention of Stranger.*
    Where a stranger assumes to pay a usurious debt of another, the intervention of this stranger purges the usury, and he cannot set it up against his obligation to pay.   (p. 579).

4. Usury—*Purchase Money—Debt.*
    If one buy land that is under a deed of trust for a usurious debt, and is allowed out of the purchase money a sum to pay the debt, including the usury, he cannot discount the amount by setting up the usury.   (p. 579).

5. Injunction—*Sale of Land—Usury—Sale Notice.*
    If a sale of land is about to be made for a debt, including usury, an injunction lies against it; but if the sale notice proposes to sell for only the true amount, excluding usury, and so specifies, · an injunction does not lie.  ⟨p. 581).

Appeal from Circuit Court, Doddridge County.

Bill by Frank Smith against Samuel McMillan and others.   Decree for plaintiff.   Defendants appeal.

*Reversed.*

Millard F. Snider and John Bassel, for appellants.

W. S. Stuart, for appellee.

Brannon, Judge:

John Smith borrowed money of Samuel McMillan, and also of S. B. McMillan, and on May 18, 1875, gave a deed of trust to secure the notes therefor, which bore interest at ten per cent.; and on November 18, 1878, he gave new notes to each of them, and a deed of trust to secure them, upon

the same two tracts of land, the notes calling for ten per cent. interest, as before. On June 4, 1879, John Smith conveyed one of the tracts to his son, Frank Smith, for part cash, and the deed provided that Frank should pay one thousand dollars of the purchase money on the McMillan deed of trust, and Frank executed notes to his father for the residue. On January 18, 1884, Frank Smith took up the notes which had been given to the McMillans by John Smith, and in place of them gave to Samuel McMillan his own three notes, amounting to eight hundred and ninety-six dollars and seventy-two cents, and three notes to S. B. McMillan, amounting to seven hundred and twenty-two dollars and eighty-one cents, payable in twelve, eighteen, and twenty-four months. These notes included usury in the past on his father's notes, and they included, as part of their principal, interest at eight per cent. from their date until their maturity. They were secured by a deed of trust from Frank Smith. The trustee was proceeding to sell under this last trust, when Frank Smith filed a bill in Doddridge County to enjoin the sale, seeking to reopen the whole transaction, from the beginning, between his father and the McMillans, purge them of usury, and, by counting the money loaned, with lawful interest, and applying certain payments, claiming that nothing was due from him, and seeking to enforce a release of the trust as satisfied. John Smith, in a settlement with Frank, actually allowed him one thousand one hundred and sixty dollars for money paid by Frank Smith for him on the McMillan debt. The decree allowed Frank Smith to go back of January 18, 1884, and have the benefit of usury charged to John Smith, and charged Frank Smith with only one thousand dollars and its interest as paid for John Smith. The McMillans appealed.

The case involves no disputation as to fact, but only law questions. The circuit court erred in allowing Frank Smith to go back of January 18, 1884, and have the benefit of usurious interest prior to that date, paid on the notes of John Smith. John Smith, though a party to the suit, did not plead that usury. If he had done so, the recovery would be his, not Frank Smith's. The plea of usury is personal to the debtor, and even a party who buys from the debtor land bound by a usurious mortgage cannot plead

the usury to save his land, but must pay the full debt, be-
cause the defense can be made only by the debtor. *Lee* v.
*Feamster*, 21 W. Va. 113; *Spengler* v. *Snapp*, 5 Leigh, 478.

There is another reason why Frank Smith cannot de-
duct the interest prior to January 18, 1884. On that date
he paid his father's indebtedness to the McMillans by lift-
ing his father's notes, and giving his own notes and deed of
trust in their place. Where a stranger assumes and gives
his note for a usurious debt, the usury is purged away, and
this stranger cannot plead the usury which had existed be-
tween the antecedent parties. 27 Am. & Eng. Enc. Law,
956; *Drake's Ex'r* v. *Chandler*, 18 Grat. 909; *Keckley* v.
*Bank*, 79 Va. 458; *Bearce* v. *Barstow*, 6 Am. Dec. 25. A
change of parties to the contract obliterates the usury. For
a binding consideration the new man agrees to pay a cer-
tain sum in satisfaction of the debt of the man who paid
him to pay it. John Smith paid Frank Smith for paying
his debts to the McMillans,—left money in his hands with
which to pay it. With what grace can he object to pay
that money where it was designed he should pay? All the
authorities agree that he must pay it. The money is not
his If allowed to abate usury, he would get the land for
less than he agreed to pay. Even if he had received noth-
ing for paying it, he must pay it, antecedent usury and all.
*Crenshuw's Adm'r* v. *Clark*, 5 Leigh, 65 *Coffman* v. *Mil-
ler*, 26 Grat. 698; *Michie* v. *Jeffries*, 21 Grat. 334, 345;
*Stone* v *Ware*, 6 Munf. 541; 27 Am. & Eng. Enc. Law,
952. In this case John Smith conveyed to Frank Smith the
mortgaged land, recognizing the McMillan debt,—in deed,
providing for its payment out of purchase money; and thus
John Smith waived the defense of usury, and Frank, by ac-
cepting the property, is estopped from setting it up. *Sands*
v. *Church*, 6 N. Y. 347; *Morris* v. *Floyd*, 5 Barb, 130;
Tyler, Usury, 407; 27 Am. & Eng. Enc. Law, 952. The deed
from John to Frank Smith deposited with Frank, June 4,
1879, only one thousand dollars to go to the McMillans; but
in a settlement of the purchase money for the land under
the conveyance to Frank, which was made in a suit of
Smith, administrator of Thomas Smith, against John
Smith, Frank Smith claimed against his father the sum of
one thousand three hundred dollars, as paid for his father
on the McMillan indebtedness, and was decreed a credit

of one thousand one hundred and sixty dollars. So his father paid him that sum to pay for him to the McMillans, and that sum, with 6 per cent. interest from the date of the deed from John to Frank Smith, June 6, 1879, to date of Frank's notes to the McMillans, January 18, 1884, will amount to more than one thousand four hundred and forty-six dollars and two cents, claimed by the McMillans as then due from John Smith; the principal properly entering into Frank Smith's notes to the McMillan's, deducting the eight per cent. interest from their date till maturity. Anyhow, Frank Smith gave his notes, and the introduction of a new party purges the antecedent usury.

The true amount payable to the McMillans is what was due January 18, 1884, from John Smith to them, which I understand to be one thousand four hundred and forty-six dollars and two cents, with interest at six per cent. per annum from that date, not eight per cent. It is true, Frank Smith, in his notes to the McMillans, agreed to insert, and did insert, as principal, a sum for eight per cent. interest for the time the notes were to run, with the promise in them that after maturity the notes should bear ten per cent.; but that was not legal. McMillans' counsel insists on the validity of this eight per cent. agreement on the plea that it was for purchase money of land, which renders any interest stipulated binding; but I deny this theory. If John Smith, when he conveyed land to Frank, had devoted a part of its price to pay to the McMillans, with eight or ten per cent. interest, this plea would prevail; but he did not do so. He paid Frank Smith money to be paid to the McMillans, and thus it became a mere debt to the McMillans, against Frank, and, when they took Frank's notes, it was merely a case of the forbearance of money, not purchase money. Therefore, any sum incorporated into those notes for illegal interest cannot be allowed. This results in making Frank's notes call for, as principal, the amount due on their date from John Smith to the McMillans, which I understand to be one thousand four hundred and forty-six dollars and two cents, with six per cent. interest thereafter, subject to a credit of the Freeman notes, eight hundred and forty dollars and thirty-six cents, May 1, 1889. The depositary, or party agreeing to pay a fixed sum on a usurious debt, need only pay that with lawful interest

thereafter, if it runs on, unless he gives his note for more, or it is charged on land. Here the father paid Frank Smith one thousand one hundred and sixty dollars to pay the McMillans, and, so far as their debt calls for that sum, he must pay it.

As the trustee was selling to pay the notes "with legal interest," the McMillans waived the ten per cent. from the maturity of the notes; but they included eight per cent. from January 18, 1884, to maturity, and the sale was to be for this two per cent. illegal interest, and thus Smith had right to injunction and costs. Had this two per cent. been excluded, and the sale notice had specified the proper sum for which the sale was to be made, with legal interest, there would have been no cause for injunction.

The court erred in charging to Smith the cost of sale notice and half trustee's commission. The sale for excessive interest, though small, was unlawful, and the cost of sale notice was not lawful. How could Smith be charged with half commission to the trustee on a sale never made, and which would be unlawful? The bill is said to be demurrable, as it did not offer to pay the balance due. It denied any balance. Decree reversed, and case remanded.

*Reversed.*