Argued 28 July; decided 18 August, 1902.

### HICINBOTHEM *v.* INTERSTATE LOAN ASSOC.

[69 Pac. 1018.]

CONTRACTS OF FOREIGN CORPORATIONS—WHAT LAW GOVERNS.*

A contract between a resident citizen of Oregon and a foreign corporation having a local agent in this state, concerning Oregon land, is an Oregon contract, and should be construed according to the laws and court decisions here, though the principal and interest are in terms payable at the home office of the corporation, and it has for the convenience of its patrons sent to such local agent for collection the receipts for the amounts due under the contract, and though the contract contained a distinct agreement that it should be construed in accordance with the laws of the home state of corporation: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319, and *Pacific Build. Co.* v. *Hill,* 39 Or. 280, followed.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is a suit by William Hicinbothem against the Interstate Savings and Loan Association to compel the cancellation of a mortgage on the ground that the amount secured thereby, with legal interest, has been paid, and comes here on appeal from a decree sustaining a demurrer to the answer and granting the relief prayed for. From the pleadings it appears that the defendant is a Minnesota corporation, organized for the purpose and with the power of conducting the business of a general co-operative building and loan association. On October 1, 1892, one Edwin Joost, a resident of this state, applied to the association for a loan of $1,000 on certain real estate

---

*NOTE.—See 54 Cent. Law Jour. 223, for an article, Enforcement of Contracts Valid Where Made, but Contrary to the Public Policy of the State of the Forum.

in Portland, through William Irle, who was its agent here, "authorized and empowered by it to take applications for loans and to forward them" to its home office in Minneapolis, but without authority "to accept applications for loans, or to make any loans for or in behalf of the defendant." He also applied, at the same time, for ten shares of its capital stock, of the par value of $100 each, agreeing to pay therefor in monthly installments of sixty cents a share until the stock "shall attain the par value of $100 per share." It was stated in the application that all payments on stock should be due and payable at the home office of the company, "but, for the convenience of members, the association sends for collection to the local bank or treasurer the monthly installment receipts." Irle forwarded Joost's application for a loan and subscription to the capital stock to the home office of the company, where they were approved by the proper officers. October 6, the stock was issued, and the loan ordered made. On October 11, Joost executed his promissory note in favor of the defendant, which was dated at Minneapolis, Minnesota, but was in fact made at Portland, Oregon, agreeing to pay the company at its office in Minneapolis, on or before the maturity of the stock issued to him, the sum of $1,000, with interest thereon at the rate of six per cent. per annum, and seven per cent. premium per annum, both interest and premium payable monthly. To secure the payment of the note, he transferred and delivered to the defendant his stock as collateral security. He also executed at Portland a mortgage to the defendant on the real property described in his application, to secure the payment of the loan, interest, and premium; the monthly payments to become due on the stock, insurance, taxes, etc. Among other stipulations in the mortgage, was a covenant and agreement that it and the note secured thereby were made and executed under, and should be construed in accordance with, the laws of the State of Minnesota and the articles of incorporation and by-laws of the defendant, "anything in the laws of any other state or territory, to the contrary, notwithstanding; and any provision whatever, in the laws of any other state

or territory, at variance with the law of the State of Minnesota, either on the subject of interest, premium, or any other matter, is hereby waived." On May 17, 1895, Joost and wife conveyed the mortgaged premises to one Henkle. He in turn conveyed them to plaintiff, who assumed and agreed to pay to the defendant the balance due on the indebtedness. Payments were regularly made on the stock and note as agreed upon until January 1, 1900, the total amount of which it is admitted, as we understand the record, was sufficient to pay the full amount of the loan, with legal interest.

*Messrs. Carey & Mays* for appellant made this point in their brief:

This is a case of a building and loan association mortgage, made before any law regulating such associations was adopted in Oregon, and made by its express terms payable at Minneapolis, Minnesota, where the contract was strictly within the provisions of statute law. No charge of fraud or intention to evade the laws or policy of the State of Oregon is in the case. The simple question on the demurrer is whether a *bona fide* contract to be performed in another place may provide for the payment of a legal rate of interest at that place greater than could be legally collected where the contract is made. We rely upon *Bedford* v. *Eastern B. & L. Assoc.* 181 U. S. 227 (21 Sup Ct. 597); and *McIlwaine* v. *Ellington,* 111 Fed. 581 (55 L. R. A. 933).

*Mr. William Reid* for respondent made this point in his brief:

The appellant, as is shown by the allegations of its answer, was doing business in the State of Oregon at the time the contracts in question herein were made and executed, and therefore this case comes clearly within the rule announced in the case of *Pacific Build. Co.* v. *Hill,* 40 Or. 280 (67 Pac. 103).

40 OR.—33.

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

That the contract between Joost and defendant was usurious under the laws of this state is conceded: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319 (63 Pac. 489, 84 Am. St. Rep. 793) ; *Pacific B. Co.* v. *Hill,* 40 Or. 280 (67 Pac. 103). The position of the defendant is, however, that the contract should be construed according to the laws of Minnesota, where it is valid, and not according to the laws of this state. There is some diversity of opinion whether a contract of a foreign building and loan association, such as the one now under consideration, that is not usurious under the laws of the state where the corporation is organized and domiciled, and where the obligation is made payable, can be attacked for usury in the courts of the state of the borrower's residence, where the contract was actually made, and the mortgaged premises are situated; but, by the great weight of authority, the validity of such a contract is solvable by the law of the place where it was made, and not where payable. The law governing these associations, and by which their contracts are to be construed, is so thoroughly considered by Mr. Justice WOLVERTON, in the Stanley and Hill cases, that nothing more need be said upon the subject, although it may be proper to note that the same conclusion has recently been reached by the Supreme Court of Mississippi, in an exhaustive and masterly opinion by Mr. Chief Justice WHITFIELD: *National Mut. B. & L. Assoc.* v. *Brahan* (Miss.), 31 South. 840. The case now under consideration cannot be distinguished on principle from the *Hill Case,* the contracts in both being made before the passage of the act of 1895 (Laws, 1895, p. 103) regulating the business of building and loan associations. The fact that the plaintiff in the *Hill Case* had made loans to other citizens of Oregon, had a local advisory board composed of citizens of the state, and exacted from borrowers a bid of fifty per cent. of their stock, to be assigned to the company, does not differentiate it from the present case. Such circumstances only went to show, and were alluded to by the court as evidence, that the com-

pany was in reality doing business in Oregon, and that the agreement between it and Hill was not an isolated instance of a nonresident making a contract with a citizen of this state, to be performed elsewhere. So, too, here, while the defendant did not have a local advisory board, and it does not appear that it had in fact made loans to other persons, it is averred that it had a resident agent here, with authority "to take applications for loans, and forward them to the home office," and, although it was stipulated that all payments on stock, premiums, and interest were due and payable at the home office, it did, "for the convenience of its members," send, "for collection, to the local bank or treasurer, the monthly installment receipts." In short, it was doing, or offering to do, a general loan and savings business in the state, of like character with that of the plaintiff in the *Hill Case. Bedford* v. *Eastern B. & L. Assoc.* 181 U. S. 227 (21 Sup. Ct. 597) was a suit in the United States court to foreclose a mortgage on land in Tennessee in favor of a foreign building and loan association, and the Supreme Court of the United States very naturally followed the decisions of the Tennessee courts, holding that such a contract was solvable by the laws of the state where the company was domiciled and the contract made payable.

We are of the opinion, therefore, that the decree of the court below must be affirmed, and it is so ordered. AFFIRMED.