Argued 12 November; decided 8 December, 1902.

## FROST *v.* PACIFIC SAVINGS CO.

[70 Pac. 814.]

BUILDING ASSOCIATION—ASSUMING USURIOUS MORTGAGE.*

A grantee of mortgaged property who agrees as part of the consideration for his purchase that he will pay the mortgage debt, cannot afterward avoid such debt, or any part thereof, on the ground of usury—and building and loan mortgages are not exceptions to the rule: *Hicinbothem* v. *Interstate Loan Assoc.* 40 Or. 511, distinguished.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is a suit by John B. Frost and wife against the Pacific

---

*NOTE.—On this point, and to the same effect, see *Scanlon* v. *Grimmer*, 70 Am. St. Rep. 326; *Spinney* v. *Miller*, 89 Am. St. Rep. 351, 359.—REPORTER.

States Savings, Loan & Building Co. to compel the cancellation of a mortgage on the ground that the amount secured thereby has been fully paid. The defendant is a California corporation, organized for the purpose and with the power of conducting the business of a building and loan association. On May 16, 1893, one Jason J. Covey borrowed of the corporation, at Portland, Oregon, the sum of $1,000, payable on or before seven years after date, with interest at the rate of 6 per cent per annum, payable monthly. According to the scheme or plan of the corporation, Covey was required, in order to secure the loan, to subscribe for twenty shares of its capital stock, of the par value of $100 a share, to transfer ten of such shares to it as a bonus or premium on the loan, and the other ten as security therefor, and to pay sixty cents a share each month until the monthly payments and accumulated profits amounted to the par value of the stock, when it was to be surrendered to the corporation in cancellation of the debt. As an additional security for the loan, and to secure the monthly payments on the stock, and all fines and charges that might become due from him, Covey executed and delivered to the defendant a mortgage on certain real estate in Multnomah County. He thereafter made payments on the loan and on the stock in accordance with his contract, until on or about July 14, 1894, when he sold and conveyed the mortgaged premises to the plaintiff John B. Frost, who assumed and agreed to pay the balance remaining unpaid on the mortgage, deducting from the purchase price of the premises such amount. Frost continued to make payments on the stock and mortgage as stipulated in the original contract between defendant and Covey until December 9, 1898, when it was found and determined between him and the defendant that there was then a balance of $500 due thereon. The original contract, including the stock and mortgage, was thereupon canceled, and a new mortgage given by Frost and his wife on the same premises for the $500 balance due thereon; the company issuing to him the requisite shares of stock, to be matured by monthly payments of sixty cents a share, as stipulated in the contract with

Covey. Frost thereafter made payments on the stock issued to him, and on the $500 mortgage, until the amount thereof, together with the sums previously paid on Covey's stock and mortgage, aggregated enough, if credited upon the original loan, to pay the entire debt and interest. The defendant refusing to release the mortgage, this suit was brought for its cancellation, and from a decree rendered in favor of the plaintiffs the defendant appeals.                    REVERSED.

For appellant there was a brief over the names of *Greenbury W. Allen* and *Cake & Cake,* with an oral argument by *Mr. Harry M. Cake.*

For respondents there was a brief over the name of *William Reid.*

MR. JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

It is conceded that the contract between Covey and the defendant was usurious, under the laws of this state, and that, as between the parties thereto, all payments made thereon would go to the extinguishment of the debt: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319* (63 Pac. 489, 84 Am. St. Rep. 793; *Western Sav. Co.* v. *Houston,* 38 Or. 377 (14 Am. & Eng. Corp. Cas. N. S. 710, 65 Pac. 611) ; *Pacific Build. Co.* v. *Hill,* 40 Or. 280 (67 Pac. 103, 56 L. R. A. 163). The contention of the defendant, however, is that Frost, having purchased the mortgaged premises, and assumed and agreed to pay the amount then due on the mortgage, as a part of the purchase price, is not entitled to set up the defense of usury as against such mortgage, although it concedes that payments made after the renewal of the mortgage shall go in extinguishment thereof. The plaintiffs, on the other hand, contend that all payments should be credited on the original loan, and go in satisfaction thereof, whether made by Frost or Covey. The question is thus squarely presented whether a purchaser of mortgaged premises, who assumes and agrees, as a part of the consideration

*Also published in 58 L. R. A. 816, with note.

therefor, to pay the debt secured by the mortgage, can afterward interpose the defense of usury against its collection, and thus avail himself of the usurious character of the contract of his grantor. There is, perhaps, a want of harmony in the adjudicated cases as to whether a purchaser of the equity of redemption, or one who purchases expressly subject to a mortgage, can set up usury as a defense against the foreclosure thereof. But whatever the rule in that regard may be, the authorities are all practically agreed that if the grantee assumes and agrees to pay the lien, as part of the purchase price of the premises, he cannot then make such defense. The foundation of this doctrine is not that the original transaction is thereby purged of the taint of usury, but rather, as said by the Supreme Court of New Jersey, that "The purchaser, by taking title subject to the mortgage, and retaining out of the price he agreed to pay sufficient money to pay the mortgage, places himself in a position where he cannot allege usury without attempting to keep back part of the money which he agreed to pay for the mortgaged lands. Having retained enough of the purchase money to pay the mortgage, under a promise that he would apply the money to the payment of the mortgage, it is plain that if he were allowed to make the defense of usury, and should make it successfully, he would defraud both his grantor and the mortgagee. He would be permitted to speculate on a violation of law that had done him no harm, and to keep back money to which he has no right whatever, and to do so in direct violation of his promise. To prevent this, equity says that he shall not make the defense of usury; but it says so, not because the mortgage has been purged of its taint, but because he kept back enough of the purchase money to pay the mortgage under a promise that if the money was left in his hands he would pay the mortgage debt. This is the foundation on which the doctrine rests, and it has no other": *Trusdell* v. *Dowden,* 47 N. J. Eq. 396 (20 Atl. 972) ; 27 Am. & Eng. Enc. Law (1 ed.), 952; Webb, Usury, § 374; 2 Pomeroy, Eq. Jur. (2 ed.), § 937; 1 Jones, Mortg. (4 ed.) § 644; *Smith* v. *McMillan,* 46 W. Va. 577 (33 S. E. 283).

This rule is applied in all its scope to a grantee who purchases premises covered by a usurious mortgage given to a building and loan association: Thompson, Bldg. Assoc. (2 ed.) § 261; *Building Assoc. of Dak.* v. *Walker,* 59 Neb. 456 (81 N. W. 208); *Building Assoc. of Dak.* v. *Bilan,* 59 Neb. 458 (81 N. W. 308); *Burlington Mut. L. Assoc.* v. *Heider,* 55 Iowa, 424 (5 N. W. 578, 7 N. W. 686); *Anderson* v. *Oregon Mtg. Co.* (Idaho) 69 Pac. 130; *Stein* v. *Indianapolis, etc., Assoc.* 18 Ind. 237 (81 Am. Dec. 353); *People's Sav. Bank* v. *Collins,* 27 Conn. 142; *Building & L. Assoc.* v. *Sellars,* 19 Tex. Civ. App. 201 (46 S. W. 370).

The cases of *Sawtelle* v. *North Amer. Sav. Co.* 14 Utah, 443 (48 Pac. 211); *Howells* v. *Pacific States Build. Co.* 21 Utah, 45 (60 Pac. 1025, 81 Am. St. Rep. 659), and *National L. & Invest. Co.* v. *Stone* (Tex. Civ. App.) 46 S. W. 67, do not militate against this doctrine. In the Sawtelle case the purchase was made a few days after the execution of the mortgage, and, although the purchaser assumed and agreed to pay it, he did not see it until he stopped payments, and had no knowledge of its nature or character, but supposed it to be the same as an ordinary mortgage. These facts, in connection with the character of the particular contract, were deemed sufficient by the court to entitle the purchaser to have the amount paid by him as dues on stock subscribed for by his grantor applied in reduction of the debt, on the ground that the contract was a "hard one, if not entirely unconscionable." The question of usury, or the right of a grantee to make such a defense, was not there involved or considered. The Howells case was founded on a contract between the association and the borrower, and what is said in the opinion about the rights of a grantee is mere dictum. In *National L. & Invest. Co.* v. *Stone,* 46 S. W. 67, the grantee did not assume or agree to pay the mortgage, but only "all legal amounts" due thereon. The court found from the oral evidence that this provision in the deed was intended and understood to include the principal only, and for this reason the vendee could avail himself of the defense of usury. The court evidently did not intend to lay down any general rule, because,

about a month later, in an opinion by the same justice, it was directly held that a purchaser of land, who had assumed, as a part of the purchase price, a mortgage on the premises, given to a building and loan association, could not set up usury in the original debt secured by the mortgage: *Building & L. Assoc.* v. *Sellars*, 19 Tex. Civ. App. 201 (46 S. W. 370). The case of *Hicinbothem* v. *Interstate L. Assoc.* 40 Or. 511 (69 Pac. 1018), is also cited as sustaining, in principle, the decision of the court below in this case. But the question here presented was not raised, suggested, or considered in that case. The sole point there presented and decided was whether the contract involved should be construed according to the laws of Minnesota or Oregon. It follows that the decree of the court below must be reversed, and it is so ordered.          REVERSED.

---

Decided 15 December, 1902; rehearing denied 30 March, 1903.