# CHARLESTON.

Prince *v.* Holston National Building and Loan Ass'n.

Submitted February 2, 1904. Decided February 16, 1904.

1. Contracts—*Usury.*
    Plaintiff, P. and wife, executed to defendant a bond as follows: "$1,500. Bristol, Tennessee, Dec. 1, 1891. On or before

nine years from date we promise to pay the Holstein National Building and Loan Association, at its Home office, Bristol, Tennessee, fifteen hundred dollars, and a premium of $7.50 per month, together with interest on the sum of fifteen hundred dollars at the rate of six per cent per annum, payable monthly," with an underwritten condition that said interest on the $1,500, and the monthly premium of $7.50 and the monthly payments on the shares of stock and any fines assessed under the rules of said association, and taxes, insurance, etc., as set out in the bond and mortgage securing said loan should be paid "until said stock becomes fully paid in and of the value of $100 per share, then it is understood that upon the surrender of said stock to said association this note shall be deemed fully paid and cancelled." *Held:* That under said contract the obligor was bound to pay the premium of $7.50 per month until the maturity of the stock upon which the loan was made. *Held, further:* That the time of the maturity of the stock being indefinite and uncertain rendered the amount of the premiums to be paid uncertain and thereby the monthly payments of premium were required to be paid for an indefinite period and so rendered illegal and making the contract usurious. (p. 27).

2.  LEGAL INTEREST.

P. having subscribed for twenty shares of the stock of defendant association for the sole purpose of borrowing the par value thereof, $2,000, and not to hold any part of said stock as investment stock, and the association having refused to loan P. on more than fifteen of said shares $1,500, it was not error to apply all payments of dues made by said P. on the twenty shares of stock on account of the debt of $1,500, and its legal interest. (p. 28).

Appeal from Circuit Court, Mercer County.

Bill by Ash M. Prince against the Holston National Building and Loan Association and another. Decree for plaintiff. Defendant association appeals.

*Affirmed.*

W. WALTER MCCLAUGHERTY, for appellant.

H. A. RITZ and A. W. REYNOLDS, for appellee.

MCWHORTER, JUDGE:

Ash M. Prince subscribed for twenty shares of stock of the par value of $100 per share, in the Holston National Building and Loan Association of Bristol, Tennessee, and a certificate of said twenty shares of stock was issued to him on the 13th day of

July, 1891.   On the 4th day of August, 1891, the said Prince
applied to the association for an advance or loan to him of
the full amount of the par value of his stock, $2,000.00, and in
his application offered to pay a premium of 50 cents per month
on each $100.00 borrowed and to secure the premium and the
loan with interest at 6 per cent. per annum by a deed of trust
to be executed upon certain real estate in the city of Bluefield,
county of Mercer, State of West Virginia.   The application
having been approved by the association to the extent of a loan
of $1,500.00 on fifteen of the shares the said Ash M. Prince
and Emma J. Prince, his wife, executed the following note or
bond:

"$1,500.00.   Bristol, Tennessee, Dec. 1st, 1891.   On or be-
fore nine years from date, we promise to pay the Holston Na-
tional Building and Loan Association, at its Home Office,
Bristol, Tennessee, Fifteen Hundred dollars, and a premium
of $7.50 per month, together with interest on the sum of Fif-
teen Hundred  * * *  Dollars, at the rate of six per cent. per
annum, payable monthly.

"This note is for money borrowed on fifteen shares of the
ninth series stock of said Association, and is secured by a mort-
gage of even date herewith, upon a lot of land in the county
of Mercer  * * *  and State of West Virginia.   Now if we
pay promptly the monthly interest on said sum of $1,500.00 and
the monthly premium of $7.50 bid by us for said loan and the
monthly payments on said shares of stock and any fines assessed
under the rules of said Association, and the taxes accruing on
the lot of land described in the mortgage securing this obliga-
tion, and the premiums necessary to keep the house on said lot
insured in such sum as said Association may require (not ex-
ceeding $1,500.00) until the said stock becomes fully paid in
and of the value of $100.00 per share, then it is understood that
upon the surrender of said stock to said Association this note
shall be deemed fully paid and cancelled.   But if we fail to
pay promptly when due and payable, the said taxes and insur-
ance, premiums, or default in the payment of said monthly in-
terest, monthly premiums, fines and monthly payments of said
stock for a period of six months after the same are, or any in-
stallment thereof is due, then, at the option of the said Associa-
tion the whole indebtedness evidenced by this obligation (includ-

ing any taxes and insurance premiums due or paid by said asso-
ciation) shall at once become and be due and collectable, and a
foreclosure of said mortgage in the manner therein provided
may be had.

"It is further understood that this Note is made with refer-
ence to, and under the laws of said State of Tennessee; and if
paid before seven years from its date, such rebate from the
premium included herein will be allowed, as the Board of
Directors of said Association shall deem equitable.

"Witness our hands and seals the day and year first above
written. Ash M. Prince, [Seal]. Emma J. Prince. [Seal]."

And at the same time executed a deed of trust to W. W.
McClaugherty, trustee, with covenants of general warranty of
title on certain real estate therein described to secure the said
note or obligation and the payments therein provided for ac-
cording to its provisions and provided that if the obligors should
comply with their undertaking in said obligation till the same
should be paid or cancelled as therein provided then the con-
veyance should become and be void; but that if default should
be made at all or in any of the particulars mentioned in said
note or obligation which should make the same due then the
trustee was authorized, when thereto required, in writing by
any party interested, and after having given notice required by
the 6th section of chapter 72 of the Code of West Virginia, of
1884, to proceed to sell the property conveyed to the highest
bidder at public auction. Default in some of the payments
having been made as provided for in the deed of trust and the
trustee, McClaugherty, being requested so to do by the associa-
tion, advertised the property for sale on the 23d of October,
1897. On the 6th of October, 1897, Ash M. Prince presented
his bill in equity against the Holston National Building and
Loan Association, and W. W. McClaugherty, trustee, alleging
that the contract was usurious and unlawful and that the pay-
ments that he had made to said association had more than paid
his debt and interest to the said association, and alleging that
under the facts and circumstances set out in his bill that he
was entitled to have the sale of the property forever enjoined
and to have the usury expunged from said contract and to have
a decree compelling said defendant loan association to release
the lien of said trust deed and to have a decree against the

defendant loan association for whatever sum might be ascertained to be due to the plaintiff by the defendant loan association for which, and for general relief plaintiff prayed; and on the said 6th of October, 1897, the said judge granted the plaintiff an injunction as prayed for until the further order of the circuit court of Mercer county, or of the judge in vacation, which injunction was to take effect upon bond being given as required by the order.

The defendant association filed its demurrer and separate answer to the bill denying the material allegations thereof and claimed there was yet due the association from the plaintiff on account of said loan on the first day of September, 1897, the sum of $962.79 and filed a statement of account with its said answer.

Depositions were taken and filed in the cause and on the 13th day of May the same was argued and submitted to the court and time taken until the next term with leave to counsel to file briefs before the judge in vacation.  On the 21st of February, 1900, the cause was heard upon the bill and demurrer and answer of the defendant association, the orders made and the depositions of witnesses and upon the motion of the defendant association to dissolve the injunction and upon the written briefs of counsel.  And the court being of opinion that there was usury in the contract set up in the bill and proceedings, and that the defendant association was entitled to recover the sum of $1,500.00 with interest at the rate of six per cent. per annum from the first day of December, 1891, subject to be credited by all sums paid by plaintiff, premiums, interest and dues on stock as of date of their payment and referred the cause to a commissioner to ascertain and apply such credits as the plaintiff might be entitled to, to the debt of the association and to ascertain the status of the account between the parties and report his calculations and any evidence taken by him to the court and to report such other matter as might be deemed pertinent by himself, or which might be required by the parties in interest; and the injunction was continued until the coming in of the report of the commissioner.

The commissioner filed his report based upon said decree of February 21, 1900, showing a balance due from Prince to the association of $57.43, as of May 14, 1900.  The defendant

association filed exceptions to said report' and on the 17th of May, 1900, the cause was again heard upon all the former proceedings and upon said report and the exceptions thereto and the court overruled the exceptions to the report and confirmed it in all respects and entered a decree in favor of the defendant association for $57.43 as the correct amount remaining unpaid on its lien set up in the cause and gave the plaintiff his costs of $60.03 recovered in the cause to offset and discharge the said balance due on the lien and discharged and released the lien and perpetuated the injunction. From which decree the defendant association appealed.

The first error assigned is the overruling of the demurrer to plaintiff's bill; the second and third, in refusing to dissolve the injunction on motion made in vacation on the incoming of the answer of the defendant. There is nothing offered on the first assignment of error in the briefs of the defendant to sustain the demurrer, and the bill on its face appears to be good. It is insisted in support of the second and third assignments, that the plaintiff having conveyed the real estate in question, prior to the institution of the suit had no interest therein and could not maintain his suit; that the plea of usury was personal to himself and the same could not be maintained for the benefit of his grantees.

The defendant filed as an exhibit with its answer a deed of conveyance made by the plaintiff and his wife to Jacob Bloch and Abraham Bloch, dated on the 2d day of October, 1897, and acknowledged on the 5th, and recorded in the clerk's office of Mercer County on the 14th day, same month, conveying to said Blochs, in consideration of $5,708.32, with general warranty, except as to $5,500.00 which was secured by deed of trust on the property conveyed certain property in the city of Bluefield, including the property conveyed and described in the deed of trust made by said Prince and his wife to secure the loan to the defendant association. Appellant insists that the property having been conveyed before the institution of this suit, which was begun on the 8th day of October, 1897, plaintiff had no further interest in the real estate having conveyed the same as stated, and the injunction should be dissolved and his suit dismissed. It is true the defense of usury is personal to the debtor and that one who purchases land that is under deed of trust for a usur-

ious debt cannot set up the usury against that debt; *Smith* v. *McMillan,* 46 W. Va. 577, (syl. pts. 1 and 2).   And point 3, holds that "Where a stranger assumes to pay a usurious debt of another the intervention of this stranger purges the usury and he cannot set it up against his obligation to pay."   See also 2 Pom. Eq. Jur., s. 937.   It appears from the evidence in case at bar, however, that the Blochs, vendees of said Prince, did not assume the payment of the said lien and the same was not included in the $5,500.00, to secure the payment of which Prince took a deed of trust.   It further appears from the evidence that the deed to the Blochs was not delivered until the 12th day of October, four days after the filing of plaintiff's bill.   Defendant's counsel, in support of their position on this question cite the Virginia case of *Saunders* v. *Baltimore Building and Loan Association,* 37 S. E. 775.   That was a case in which it was alleged in the bill that on a date prior to the institution of the suit plaintiff had conveyed the property advertised to be sold, under the deed of trust to the loan association, in consideration of a large sum of money mentioned and the further consideration that the grantees should assume the encumbrance on the real estate thereby conveyed, which included the debt to the loan association, and the bill having failed to allege that his grantees were insolvent or that the mortgaged premises would not sell for enough to discharge the lien, or that defendant would have a right of action against him in case the premises did not bring enough to satisfy the first mortgage, it was held that the demurrer to the bill should have been sustained, and further, it was held that "the demurrer was improperly overruled, since the relief sought would inure to the benefit of complainant's grantees only, who were not entitled thereto, being bound to discharge the first mortgage by assuming the payment thereof."   In *Smith* v. *McMillan, supra,* (syl. pt. 5), it is held: "If a sale of land is about to be made for a debt including usury, an injunction lies against it."   So it appears from the record in case at bar the plaintiff had the right to interpose the defense of usury, and the court did not err in refusing to dismiss the bill on that ground.

It is well insisted by counsel for appellee that the principles announced in the cases of *Gray* v. *Baltimore Building and Loan Association,* 48 W. Va. 164, (37 S. E. 533) ; *Archer* v. *Balti-*

*more Building and Loan Association,* 45 W. Va. 37, (30 S. E. 241); and *Floyd* v. *National Loan and Investment Company,* 49 W. Va. 327, (38 S. E. 653), are conclusive of the case at bar; it being held in said causes, that a building and loan association may fix a minimum premium payable in advance or in periodical installments, but such premium must be a lump sum, certain and definite and not a percentage payable indefinitely at fixed periods. All those cases were based upon contracts fixing a premium to be paid in periodical installments which payments were to be continued just as the interest and dues on the stock subscribed were to be paid until the stock subscribed for and upon which the loan was made should be matured. The date of the maturity of stock being contingent upon the amount of business done by, and the judicious and economical management of, the association, was necessarily indefinite and uncertain. The payment of premiums in those cases were not for a fixed period of time, but were to continue until the maturity of the stock, which was liable to run indefinitely, and depended upon the economical management and the business prosperity of the association. A close inspection of the contract in the case at bar makes it clear to my mind that it is liable to the same objection, notwithstanding the bond is payable, "On or before nine years from date," it specifically provides that "the monthly interest on said sum of $1,500, and the monthly premium of $7.50 bid by us on said loan," and the dues on the stock, fines, taxes, insurance premiums, etc., shall continue to be paid "until the said stock becomes fully paid in and of the value of $100 per share," which can mean nothing but the time of the maturity of the stock upon which the loan was made which renders the time, which periodical payments of premiums shall run indefinite and uncertain, thus bringing this case clearly within the rulings of this Court in the cases cited and relied upon by appellee.

The contract in case at bar has been construed by the Supreme Court of Appeals of Virginia in the case of *Counselman* v. *Holston National Building and Loan Association,* 33 S. E. 603. The form of the contract in that case is precisely that used in the case at bar. It is there held, (syl. pt. 2), "Where the premium bid by a borrowing member of a building and loan association is payable only on maturity of the loan, and that

period is fixed by the bond and the deed securing it, the amount of the premium is sufficiently certain." Judge Riley, in delivering the opinion of the court says: "The ground of the objection is that the premium is not definite and certain, because its payment in installments is provided for in the bond, and in the deed of trust securing the same, until the stock of the appellant matures, which time is necessarily indefinite, and renders the amount of the premium uncertain. This is an erroneous construction of the contract. The premium is only payable until the maturity of the loan. That period is fixed by the bond and the deed of trust securing it. The payment of the premium cannot be exacted beyond that time. The date of the maturity of the loan is fixed and definite, and renders the amount of the premium definite and certain." And cites Thompson on Building and Loan Associations, section 190, which says: "A premium bid for the right of precedence in taking a loan cannot be collected after the maturity of the loan;" citing *Savings, etc. Association* v. *Stevens,* 3 Weekly Law Bul. 133. I have been unable to find the case of the *Association* v. *Stevens,* cited by Mr. Thompson, but it seems that case is the only authority upon which his section 190, touching this point is based. I find also section 232, Th. & Bl. on Building and Loan Associations, is to the same effect and based solely upon the same case in 3 Wkly. L. Bul. 113. A distinct provision could have been, but was not, inserted in the bond that monthly payments of premium should cease at the end of nine years, and probably it was so in the case cited by Mr. Thompson, (*Savings, etc. Association* v. *Stevens,* 3 Wkly. L. 113) ; but on the contrary the bond now under consideration provides that the premium and other things mentioned shall continue to be paid until the maturity of the stock. I cannot understand how the Court of Appeals of Virginia could come to the conclusion that payments of the premium could not be required after the loan became due, when the contract itself is so explicit in its language that monthly payments of premium shall be paid "until the said stock becomes fully paid in and of the value of one hundred dollars per share." Section 2, of Article 8, of the by-laws of defendant, the Holston National Building and Loan Association, provides "The payments of each share shall be sixty cents per month for each and every

month until maturity, commencing the last day of the month following the date of the certificate." It is impossible to tell when these payments and the fees, fines, and the earnings of the association will mature the stock to the par value of one hundred dollars per share; that being contingent upon the management and conduct and prosperity of the business, indeed it may turn out that the stock may never be matured; as is the case with many of the National Building and Loan Associations, largely because of the expense of maintaining a corps of officers on large salaries, in consequence of which the association has to borrow money at a high rate of interest to meet the demands of applicants to borrow; this necessarily renders the time the payment of installments of premium has to be kept up very indefinite and uncertain. Our statute, section 26, chapter 54, Code, provides that a loan association "May charge and receive the premium bid by a stockholder for the priority of right to such loans in periodical installments; but the by-laws of every association shall set forth whether the premium bid for the prior right to the loan shall be deducted therefrom in advance or be paid in periodical installments." In the cases of Archer, Gray and Floyd, before referred to, where it is held that the minimum premium "Must be a lump sum, certain and definite, and not a percentage payable indefinitely at fixed periods," it is so held because in the contracts then under consideration, there was no definite time fixed at which the monthly payments of premium should cease and beyond which further payments should not be collected, hence the whole amount of the premium was not and could not be fixed, definite and certain; but where it is provided that the monthly premiums of a specified amount for each monthly or periodical payment shall continue not exceeding a given number of months, it is rendered certain and definite, because it cannot go beyond the number of months designated, and if it should cease by reason of maturity of the stock and the consequent payment of the loan in a shorter time surely the borrower could not complain.

It is contended by appellant the contract involved in this cause is a Tennessee contract and that the "matters connected with the performance of the contract, *i. e.* its interpretation and the like, and operations of the parties thereto are regulated by the law prevailing at the place of performance whether the place

of performance is different from, or the same as the place of execution." This proposition is well settled as applying to case at bar in the case of *Floyd* v. *National Loan and Investment Co., supra,* syl. pt. 3, "A foreign corporation, coming into this State to transact business, must conform to the law of this State, if there be any, regulating similar corporations organized under the laws of this State; and its contracts although in terms solvable in the foreign state in which such corporation has its domicile, must be such a contract as a similar domestic corporation is authorized to make, or the courts of this State cannot enforce or permit the enforcement of, its performance." The defendant company organized in Mercer county of this State, a local board and induced the plaintiff Prince, to take stock and borrow money from it as a building and loan association, securing the loan upon real estate in Mercer county, and attempts to enforce the said contract in the courts of this State, when such contract if made with a simlar corporation organized under the laws of this State could not be enforced because usurious, this being the case the defendant will not be permitted to enforce the same.

The appellant says the court erred in overruling its exceptions to the commissioner's report in crediting upon the loan all the money paid by plaintiff as dues upon the twenty shares of stock subscribed by him when it should have been applied to the maturity of the stock. It is true plaintiff only borrowed on fifteen shares, but it was all one transaction, the record shows that he subscribed only for the purpose of borrowing and was to have $2,000 on loan, and hence subscribed for the twenty shares. But after he had subscribed for the twenty shares the defendant refused to loan to him more than the par value of fifteen shares, the plaintiff did not subscribe for the purpose of holding the five shares as investment stock, and the loan being because of its usurious nature, a straight loan of $1,500.00 at six per cent. per annum, all payments made by plaintiff on account of dues, premiums, fines, etc., were properly applied to the payment of the debt and interest.

There is no error in the decree and the same is affirmd.

*Affirmed.*