# CHARLESTON

MILLER v. THE MONUMENTAL SAVINGS & LOAN ASSOCIATION.

57    437
f63    118
63    357

Submitted March 7, 1905. Decided March 21, 1905.

1. BUILDING AND LOAN ASSOIATIONS—*Usurious Contracts—Application of Payments.*

   A corporation claiming to be a Building and Loan Association incorporated under the laws of another state, taking contracts of loan in this state without having complied with the statutes of this state relating to Building and Loan Associations, and providing in such contracts that in addition to the dues on the stock issued to the borrower and interest on its loans, there shall be paid premiums in monthly payments, such contracts are usurious, and must be held to be straight loans to be repaid with legal interest, and all payments of dues, premiums and fines which may have been made shall be applied as partial payments on such loans. (p. 445.)

2. SYLLABUS APPROVED

 Syllabus in *Gray* v. *Baltimore Building and Loan Association*, 48 W. Va. 164, approved.  (p. 446.)

Appeal from Circuit Court, Mineral County.

Action by John Miller against the Monumental Savings & Loan Association and others. Decree for plaintiff, and defendant loan association appeals.

*Affirmed.*

F. C. REYNOLDS, for appellant.

WM. McDONALD, for appellee.

McWHORTER, JUDGE:

S. Y. McDonald subscribed for five shares of stock of the par value of $100.00 a share in The Monumental Savings and Loan Association of Baltimore City, a corporation under the laws of the state of Maryland, and on the 20th day of December, 1894, said association advanced to him upon said shares, the sum of $450.00. On the same day, S. Y. McDonald and Laura McDonald his wife, conveyed to F. C. Reynolds and E. J. Bond, trustees, lot No. 3, situated on New Creek in John Hughes' addition, in the town of Keyser in Mineral county, in trust to secure the said association the said sum of $450.00 evidenced by the bond of said McDonald and wife, bearing even date with said deed of trust executed to said association, for the said loan on the five shares the "B" series of stock of said association, and further to secure the strict performance of the conditions of said bond and the covenants and stipulations of said deed, and all of the obligations incumbent on said McDonald as a member of and borrower from said association under its charter, by-laws, rules and regulations then existing, or which might thereafter lawfully be made, altered, or amended, and on the 21st day of February, 1899, the said McDonald subscribed for another share of stock in said association, and borrowed one hundred dollars from said association, and executed a like deed of trust on said property to the same trustees to secure the balance thereof, which like the former, was to be paid in dues, interest, premiums, fines, etc., as provided by the by-laws of the said association. On the said 20th of December, 1894, said McDonald and wife executed a deed of trust on the same property to F. C. Reynolds, trustee, to secure the payment to

John Miller of three certain promissory notes for $116.66⅔ each, with interest, payable one, two, and three years after date. At the February rules, 1901, John Miller filed in the clerk's office of the county court of Mineral county, his bill in chancery against S. Y. McDonald, The Monumental Savings and Loan Association, F. C. Reynolds, trustee, E. J. Bond, trustee, J. H. Markwood, and Geo. S. Frederick, setting out the liens on said property by the two said deeds of trust in favor of the defendant association, his own deed of trust, and judgments by Markwood and Frederick that had been rendered against the defendant S. Y. McDonald and recorded in the clerk's office of the county court of Mineral county in the order of their priorities, alleging among other things that all payments made by said S. Y. McDonald to the defendant association as dues, premiums, interest, and fines, should be credited to the principal and legal interest of the debt, secured by its deed of trust, and if not so applied, such premiums made and constituted usury and were void and uncollectable, and operated to hinder and delay plaintiff in enforcing his lien of his deed of trust as well as other creditors having liens against said property, and that said deed of trust to the defendant corporation was a fraud upon them, and prayed that said premiums be declared null and void, and of no effect, and that the amount credited to premiums be credited in whole or in part, as the case might be, on the principal of said bond; that the cause be referred to one of the commissioners of said court to ascertain and report the liens on the property mentioned in the bill, with their amounts and priority, and the amount yet due on each separate lien, the value of the property both annual and actual, and whether or not the rental thereof would pay off said liens and costs of said suit in five years, and for decree of sale of said property be made in said plaintiff's favor, and for general relief.

The defendant, S. Y. McDonald filed his answer and cross bill admitting the borrowing of the $450.00 and the $100.00 upon six shares of stock subscribed by him as set out in the bill, and averring that the payments made by him on account of the said loans should be credited upon the principal and interest of the amount borrowed by him; that the premiums charged by the defendant association, which was another

interest of six per cent. on the amount borrowed and consti-
tuted usurious interest, and alleged that the defendant asso-
ciation was a foreign corporation incorporated under the
laws of the state of Maryland, had not complied with sec-
tions 25 to 30, inclusive, of chapter 54 of the Code, to entitle
it to do business in the state of West Virginia, and asked
that if it had done so that it be required to show that it had
brought itself within the law, and that the premium of $2.25
per month on the first loan, and the charge of 50 cents per
month on said second or additional loan in addition to the
interest charged on the loans were usurious, and that de-
fendant was entitled to have amount so paid with the interest
thereon, applied to the principal of said loan, and prayed
that his answer be taken as a cross bill against said defendant
association, and that it be required to make a full answer
thereto; that the contract contained in the said deeds of trust
made by him to the association be declared usurious, null and
void, and that he be relieved from the payment of said pre-
miums, and that he be given credit on the principal of said loan
with said premiums, and the interest thereon from date of
each payment of premiums; that said association be required
to file with its answer, a statement of its account to the re-
spondent, showing what amount of money he had paid it, and
how the same had been credited, item by item, giving the
amount credited as interest, as premiums, as dues and fines,
and that the cause be referred to a commissioner to settle
and adjust the account between them, and for general relief.
The Monumental Savings and Loan Association filed its an-
swer, alleging that it had complied with all the provisions of
the laws of West Virginia relating to corporations chartered
in other states, and was duly authorized to do business in
this state prior to the 20th day of December, 1894, and
claimed that it had a right to collect the balance due from
S. Y. McDonald on the two loans of $450.00 and $100.00, and
filed with its answer a paper marked "Monumental Savings
and Loan Association Statement No. 1," showing the pay-
ments made by McDonald, showing the true balance to be
owing to it by him to be the sum of $354.67, if a settlement
were to be made at that time under the rules and regulations
of the association agreed to by McDonald when he became a
member of and borrower from said association. It denied

that the charges of dues, premiums and interest were usurious under the laws of Maryland and of West Virginia relating to building and loan association, and. that it was authorized to charge such dues, interest and premiums, and denied each and every allegation "of the so called cross bill of the defendant S. Y. McDonald, and says that any statement in said cross bill or answer of S. Y. McDonald which conflicts with the allegations of this answer is untrue;" that it has legitimately conducted its business under the laws of the State of West Virginia and the state of Maryland, and made no improper charge of fines, dues, interest or premiums against said McDonald; that it is entitled to receive payments as contemplated by both parties according to the deed of trust and its by-laws. The defendant McDonald excepted to the answer of the defendant association "because said answer and the exhibits filed with it utterly fails to show the value of the one-half share of unpledged stock set up in the answer of said McDonald, and because said answer does not show, as required by the laws of this State, that said Association has complied with the conditions imposed on such Associations by sections 25 to 30 inclusive, of chapter 54 of the Code, said Association being a foreign corporation." On the 20th day of April, 1901, the cause was referred to one of the commissioners of the court, who was "directed to ascertain the actual and rental value of the real estate mentioned in the bill and exhibits in this cause, and whether or not, the rents thereof will be sufficient in five years to pay the liens of said real estate and the costs of this cause; the amount of said liens with balance due thereon, with their priorities; to audit and state the account between S. Y. McDonald and The Monumental Savings and Loan Association; to ascertain the amount of dues, interest, premium and fines paid to said Association by said S. Y. McDonald and the proper amount due said McDonald from said Association on the one-half unpledged share of stock of said Association and from the earnings and profits of said Association, he shall also audit and state an account between said McDonald and the other lien holders, and take all proper evidence offered by any of the parties in interest, to report upon all matters deemed pertinent by him or required by any of the parties in interest." On the 29th of June, 1901, the defendant associa-

tion demurred to the bill, and plaintiff excepted to the answer of the association, and the association excepted to the answer and cross bill of the defendant McDonald, and the court took time to consider of the demurrer to the bill, the exception of plaintiff to the answer of the association, and the exception of the association to the answer of McDonald. On the 21st day of April, 1902, the cause was finally heard upon the demurrer of the defendant association, the answer of said association, and the exceptions in writing of the defendant McDonald to said answer, and the exceptions of the association to the answer of McDonald, and the report of commissioner R. A. Welch filed at September term, 1901, and the exceptions taken to said report by said S. Y. McDonald, because the commissioner did not ascertain and report the value of the one-half share of stock set up in said McDonald's answer, and the exceptions of said association Nos. 1 and 2, to said report for failure to allow an attorney's fee, and to allow said association the full amount of its claim as set up in its exception No. 2, and sustained the exception of said McDonald to the answer of said association, and overruled and rejected his exception to the report of the commissioner, except as to the judgment reported as to G. S. Frederick (it appearing that said judgment had been paid) in all other respects the commissioner's report was approved and confirmed. The court established the liens and their priorities as follows: $32.45 due the defendant association under its deed of trust of December 20, 1894; the sum of $197.41 to plaintiff John Miller under his trust lien of December 20th, 1894; 3rd, the sum of $44.43 due J. H. Markwood, amount of judgment and costs in his favor; 4th, the sum of $81.03 due the defendant association under its trust lien of February 21st, 1899. with interest on all of said sums from the 4th day of September, 1901, and the court held that "the said charges of premium, interest and fines as provided for in said deed of trust of said association are held to be usurious, null and void in so far as the same are in excess of the legal rate of interest charged on the principal amount of said deeds of trust," and the court in sustaining the exception No. 1 of the association allowed F. C. Reynolds as attorney for said association, a fee of $30.00 as provided in said deed of trust, and decreed that Wm. McDonald

and F. C. Reynolds, who were appointed special commissioners for that purpose, should make sale of the property in the bill and proceedings mentioned, to pay off said liens. From this decree, The Monumental Savings and Loan Association appealed, assigning as error the overruling of its demurrer to the bill because plaintiff had a second deed of trust on the property, and had no right to ask a court of equity to sell anything but the equity of redemption; that the bill on its face showed no reason for applying to a court of equity to have the deed of trust enforced. The appellant filed no brief in the cause and gives no reason for the alleged error in overruling its demurrer, except that stated in the assignment of error. There were two other deeds of trust upon the property besides that of plaintiff, one of same date but prior lien by the consent of the parties, and one subsequent. Also several liens by recorded judgments. The right to apply to a court of equity to enforce a deed of trust exists for many reasons. As for instance where there are various deeds of trust or other incumbrances. *Horton* v. *Bond*, 28 Grat. 815; *Cole* v. *McRea*, 6 Rand. 644; *Rossett* v. *Fisher*, 11 Grat. 492; *Hogan* v. *Duke*, 20 Grat. 244. "While the constantly increasing use of powers of sale in mortgages has relieved courts of equity from much labor, they have refused to be ousted of their long established jurisdiction by the existence of the new remedy; and the doctrine unamimously prevails that the insertion of a power of sale in a mortgage, merely gives to the mortgagee an additional, or cumulative remedy, which if he desires, he may disregard, and maintain a suit for foreclosure in the usual way." 26 A. & E. E. L. (1st Ed.) 881, and authorities cited. *Spencer* v. *Lee*, 19 W. Va. 179-188; *Wilkins* v. *Gordon*, 11 Leigh 547. It is true that "Where the amount of the prior liens is certain and ascertained, the sale of the equity of redemption is proper," *Curry* v. *Hill*, 18 W. Va. 370, but it was not so in case at bar; the true amount of the first lien, that of the first deed of trust of the defendant, was not certain, not having been ascertained, and the same was true also as to its second deed of trust debt. "When the court has for any purpose properly taken jurisdiction of such case, it should proceed to have the trust executed under its direction, and with its sanction, when the interests and rights of any party manifestly require

it." *Hartman* v. *Evans*, 38 W. Va. 669. The demurrer was properly overruled. The second, third, and fourth assignments of error are all based upon the charge of usury in the bill as well as in the cross bill of S. Y. McDonald, and which is sustained by the decree of the court. It is claimed that the pleadings in the cause do not sufficiently aver the usury in said contract in said deeds of trust, and that no usury is proven by the testimony or exhibits in said cause, and no ground for equitable relief shown in pleadings or by the evidence. In Hogg's Equity Prin., section 425, it is said: "If the defense of usury is raised by plea or answer, the general averment that interest at a greater rate than that allowed by law was charged in the debt, or an allegation substantially to this effect is sufficient." *Kelley* v. *Lewis*, 4 W. Va. 456; *Hooff* v. *Rollins*, 5 W. Va. 540. Section 6, chapter 96 Code, provides: "Any defendant may plead in general terms that the contract or assurance on which the action is brought was for the payment of interest at a greater rate than is allowed by law, to which plea the defendant should reply generally, but may give in evidence upon the issue made up thereon, any matter which could be given in evidence under a special replication." *Barber* v. *Tompkins*, 31 W. Va. 410. Appellant complains of the overruling of its exception to the answer or cross bill of McDonald, as it is alleged "this answer showed upon the face of it that the contract of S. Y. McDonald with the association was not usurious, and that there was no ground upon which the said S. Y. McDonald could seek affirmative relief against this association." There is nothing appearing in the record to show that the exception was taken by the association to the said answer. "The object of exceptions is to direct the attention of the court to the points excepted to and to take its opinion thereon before further proceedings are had, to the end, if the answer is insufficient, a better answer may be compelled, or, if scandalous or impertinent, that the scandalous or impertinent matter may be expunged, or, if improperly verified, that the affidavit or jurat may be corrected." *Arnold* v. *Slaughter*, 36 W. Va. 589; *Richardson* v. *Donehoo*, 16 W. Va. 685. In 1st Hogg's Eq. Pro., sec. 413, in treating of exceptions to answers, the author says: "The specific point of objection ought to be made matter of record either in an order in

which the objection appears, or by an endorsement on the answer itself, or by a writing distinctly annexed to the answer, so as to properly bring the specific matter of objection under review in an appellate tribunal, if either party should so desire." *Rogers* v. *Verlander*, 30 W. Va. 619. It is conceded by appellant that it is a corporation organized under the laws of the state of Maryland, and while it alleges in its answer that it had in all things complied with the statutes of West Virginia, yet it files none of the evidences of having so complied, although its averment that it had done so was denied by the answer of McDonald, and the proof of such compliance demanded. Section 30, chapter 54, Code, is clear and distinct in its provisions specifying what such corporation shall do in order to entitle it to transact business in this state. Said section provides: "Any corporation duly incorporated by the laws of any state or territory of the United States or of the District of Columbia, or of any foreign country, may, unless it be otherwise expressly provided, hold property and transact business in this state, upon complying with the requirements of this section, and not otherwise. Such corporation so complying shall have the same rights, powers, and privileges, and be subject to the same regulations, restrictions, and liabilities, that are conferred and imposed by this and the fifty-second and fifty-third chapters of this Code, and by chapter twenty of the Acts of 1885, on corporations chartered under the laws of this state." It will be seen that the exception taken to the answer of the defendant association is that it fails to show that it had complied with the conditions imposed upon such associations by sections 25 to 30, inclusive, of chapter 54, Code, and the answer not showing such compliance was insufficient, and the exception was properly sustained. Not having complied with the statute relating to Building and Loan Associations this association was not entitled to do business in this state as a building and loan association. "Foreign corporations doing business in this state are placed on an equality with domestic corporations to the extent that they shall exercise no greater or different powers and are made subject to the same regulations and restrictions, and governed by the same rules of law in these respects." *Association* v. *Lloyd*, 145 Ill. 620. It will hardly be contended that domestic corpora-

tions or associations organized for the purpose of carrying on the business of building and loan associations, would be permitted to have the special privileges accorded to such associations, without complying with the statutes embodied in sections 25 to 30, inclusive, chapter 54, Code, and without so complying, contracts made by them, such as are authorized to be made by such associations which have complied, providing for premiums, fines, &c. would be usurious, and loans made by such domestic corporations not having so complied with the statutes would be treated as straight loans to be repaid with six per cent. interest, and surely foreign corporations would not be entitled to more. In section 31 of by-laws of the association, it is provided that "On all loans made by this association to a shareholder, said shareholder shall pay an interest of six per cent. per annum, and also a premium of six per cent. per annum on said loan. Payments of interest and premiums shall be made monthly, on the first day of each month." When are these payments to end? The six per cent. interest and six per cent. premium are presumably to be paid until the stock is matured by the payment of dues thereon and its earnings. Nothing to indicate that the six per cent. premium is not to be paid as long as the interest is payable, and that is payable until the maturity of the stock. The certificate of stock issued to McDonald for the five shares upon which he borrowed the $450.00, December 20, 1894, provided: "This certificate will be fully paid up and the said Monumental Savings and Loan Association, agrees to pay said shareholder, his heirs, executors, administrators or assigns, the sum of $100.00 for each of said shares due and payable 8 years after date thereof or at such a time as the purchase price hereof, together with the dividends declared thereon shall equal the par value of shares herein described." "The time of the maturity of the stock being indefinite and uncertain rendered the amount of the premium to be paid uncertain and thereby monthly payments of premium were required to be paid for an indefinite period, and so rendered illegal and making the contract usurious." Prince v. Holstein Natl. Bldg. & L. Assn., 55 W. Va. 19 (46 S. E. 708); Archer v. Building Association, 45 W. Va. 37; Gray v. Bldg. Association. 48 W. Va. 164, (37 S. E. 533); Floyd v. Loan & Investment Co., 49 W. Va. 327, (38 S. E. 653); McConnell v. Cox, 50 W. Va. 469, (40 S. E. 349).

There is no error in the decree and the same is affirmed.

*Affirmed.*