# CH•ARLESTON.

GRAY *v.* BALTIMORE BUILDING AND LOAN ASSOCIATION.

Decided April 21, 1900.

1. BUILDING ASSOCIATION—*Premium.*

While a building association may fix a minimum premium payable in advance or in periodical installments, such premium must be a lump sum, certain and definite, and not a percentage payable indefinitely at fixed periods.   (p. 166).

2. PERCENTAGE—*Premium—Usury.*

A percentage payable indefinitely at fixed preiods is interest, and although it be called "premium," and is in addition to the legal rate of interest already charged, it is usurious, and should be expunged from the account.   (pp. 167, 168).

Appeal from Circuit Court, Kanawha County.

Bill by M. L. Gray against the Baltimore Building and Loan Association. From a judgment sustaining a demurrer to the bill, complainant appeals.

*Reversed.*

J. W. KENNEDY, for appellant.

FLOURNOY, PRICE & SMITH and IVORY C. JORDAN, for appellee.

DENT, JUDGE:

M. L. Gray on the 10th day of December, 1897, filed her bill in the circuit court of Kanawha County against the Baltimore Building and Loan Association, alleging that she borrowed the sum of eight hundred dollars from such association on the 8th day of March, 1895, and the association for the pur-' pose of evading the usury laws required her as a mere shift and device, to become the ostensible owner of eight shares of stock in such association of the par value of one hundred dollars each and execute a bond and a deed of trust on her property to secure the same. She was also required to pay fifty cents each per month for dues, interest and premiums per share, and ten cents per month per share for expense fund, making her monthly payments twelve dollars and eighty cents, in addition to one dollar per share as a preliminary fee. On failure to pay up her dues, interest and premium, the whole sum was to become due and her property liable to sale. That she paid into the association the sum of one hundred and thirty-two dollars and interest to March 30, 1896, and stopped paying when the association claimed a balance due from her of nine hunderd and thirty dollars and forty-five cents, and had her property advertised for sale the 11th day of December, 1897. She prayed an injunction, and that the claim be purged of its usury. The injunction was granted, the defendant appeared and demurred to the bill. The circuit court sustained the demurrer, and dismissed her bill, and thereupon she appealed.

The sole question presented to this Court is as to whether the circuit court erred in sustaining such demurrer. The defendant insists that while the bill alleges that the plaintiff was only an ordinary borrower and the whole transaction was under a building form merely as a device to evade the usury laws, that the exhibits filed clearly refute this allegation, and show the *bona fides* of the transaction as the usual, ordinary building association arrangement exempted from the operation of the statutes against usury. The association is a corporation of Maryland doing business through agents in this State, and ordinarily its contracts between itself and stockholders would be subject to the laws of Maryland, at least to the extent they are not repugnant to the laws of this State. It has been held by the court of appeals of Maryland that to exempt building associations from

the general usury laws is class legislation and repugnant to the constitution of the state, and that the legislature has no such power. *Citizen's Security and Land Co.* v. *Uhler,* 48 Md. 455. It was also held in the case cited that, "where a share holder in a corporation executes a mortgage to such corporation to secure a loan on which he agrees to pay interest at the legal rate weekly during the continuance of the mortgage; and also a premium of twenty-five cents weekly on each of his shares of stock, making in all nine and a half per cent. interest on the money loaned, such charge is usurious." In this case Mrs. Gray is required to pay fifty cents per month premium and fifty cents per month interest making twelve *per centum.* In the case of *Geiger* v. *German Building Association,* 58 Md. 569, the same court held that a premium of thirty cents per share payable weekly, amounting to more than the legal rate of interest was usurious. In its opinion the court says: "It is not called interest, but is called premium; but it is manifestly intended for interest and is an evasion of and in violation of law." Again: "In this case the word 'premium' and charge for it can only be regarded as meaning interest, and to the extent that the charge exceeds the rate of six *per centum* it cannot be allowed." The conclusion reached is that it is usurious to have the premium to take the form of a percentage payable as interest is paid indefinitely so long as the loan continues; that such method of fixing the premium is but an evasion of the laws against usury for the purpose of obtaining a greater rate of interest than the legal rate. That the amount of the premium proper should be fixed and determined as a bulk sum at the time of the bidding or borrowing and then it can be divided into installments to be paid periodically. To fix the premium at the rate of fifty cents per month payable monthly for an indefinite period in addition to the regular rate of interest at the same per centage is nothing more than doubling the rate of interest.

Since writing the foregoing I have been furnished the decision of the court of appeals of Maryland in the case of *White* v. *Williams,* assignee of this same defendant, holding that prior to chapter 321, Acts of the Legislature of Maryland, 1894, in effect April 6, 1894, that to fix the premium in shape of a per centage was usurious, thus adhering to the case of *Geiger* v. *The Eighth Ger. Building Association, cited.* The court did not pass on the effect the act would have on cases arising after its passage,

although an inference might be drawn from the opinion that after the passage of the act the premium could be fixed in the shape of a percentage. The language of the act as quoted is that "instead of receiving the whole amount of said premium in advance or deducting the whole amount of said premium," the building association may receive the same in weekly, monthly or such other installments as may be agreed upon. But it does not follow that the premium may take the form of a percentage payable indefinitely, nor does it preclude the idea that the premium must be first fixed in amount by the by-laws and then be divided into preiodical installments. In Endlich on Building Associations, section 407, it is said: "The statutes authorizing the reservation of premiums have in general been understood to mean a definite sum for the whole period of the loan, and not anything whatever that the parties in their contract may choose to denominate a bonus or premium." In Thompson on Building Associations at page 104, it is said: "The Legislative intention in allowing premiums was to confer on the association an equitable and profitable method of selecting its borrowers by requiring of them a bonus. So if the association disregards this intention and by any form increases the interest the courts promptly restrain any such practice and compel it to refund any such charge." The premium in this case seems to be fixed not for the purpose of providing a bonus, but merely as a subterfuge to double the rate of interest. It having been held that the loans of the defendant prior to the 6th of April, 1894, were usurious, and such holding destroying the mutuality of the association, it would be inequitable to require this plaintiff to abide by her contract and pay this percentage premium, although it should be determined not to be usurious under the later enactment.

It is eminently proper in this case that the laws of Maryland should prevail, as they are in no wise repugnant to the laws of this State, and all borrowers and share-holders of such association should be placed on the same footing, and only required to settle with the association on the same basis. Nor could a different conclusion be reached under the statutes of this State. Section 26, chapter 54, Code, provides that, "Every such association shall have the power to provide by its by-laws for selling to the stock-holders who shall bid the highest premium therefor the money in the treasury, or in defualt of bidders at or above a minimum premium, may award to a member the value of any

shares held by him less such minimum premium, the minimum premium and the mode of making the award to be fixed by the by-laws. Or such association may charge and receive the premium bid by a stockholder for the priority of the right to such loans in periodical installments, but the by-laws of every association shall set forth whether the premium bid for the prior right to a loan shall be deducted therefrom in advance, or to be paid in periodical installments." This provision does not authorize the minimum premium to be fixed at a percentage on the amount borrowed to be paid during an indefinite period, for such would be nothing more than increasing the rate of interest to the extent of the premium so fixed. In this case it would be simply increasing the rate of interest from six to twelve *per centum.* But the law requires that the premium should be fixed at a lump sum, commonly known as a bonus, and then it may be deducted in advance from the principal or paid in periodical installments. For instance, if such premium is fixed at ten dollars on the one hundred dollars, it can be deducted or be divided into ten equal annual installments of one dollar each, or the one hundred equal monthly installments of ten cents each. Thus the borrower knows just what premium is required of him. But where the premium is an increased interest percentage, indefinite in time, he is at the mercy of the association, and may be required to pay the same until his dues alone are sufficient to cancel the loan. In the present case, although Mrs. Gray had paid one hundred and thirty-two dollars, she only receives credit for the amount of her dues as of the time of their payment, to-wit: Forty-four dollars being the one-third thereof, the other two-thirds being retained by the association as though it were interest and not to be accounted for, and in addition she is charged the further sum of one hundred and eighty-four dollars and forty cents for the further time elapsed, composed of eighty-four dollars interest, eighty-four dollars premium, and eight dollars and forty cents fines, for which she gets no credit on her indebtedness, but it all goes into the earnings of the association from which she is allowed no dividend, thus being denied the right of a share-holder or a participator in the social funds. One of the main justifications for building associations is the fact that the earnings are social assets, to be divided among the membership so that while a borrowing member is required to pay interest, premium and fines, a large portion being an equal share

thereof is returned to him in the shape of dividends. Mrs. Gray receiving no dividends makes out a *prima facia* case of usury without regard to the manner of the payment of the premium. The prospectus of the association filed herein as its by-laws provide for the quarterly division of the profits, and although Mrs. Gray was a member in good standing for about four quarters, she was not allowed any share in such quarterly division. Why this omission the bill does not disclose. The presumption is in absence of other explanation that she was treated merely as a borrower and not as a share-holder. Being such, she has paid or been charged with twelve *per centum* interest per annum payable in monthly payments. Which without further explanation renders the loan usurious, and the demurrer to the bill should have been overruled. In the case of Archer against this same Association, 45 W. Va. 37, this Court held that: "Building associations are authorized to adopt by-laws fixing a minimum premium at which to award loans to their members, such premiums to be deducted from the loans in advance or paid in periodical installments." This is merely declarative of the statute and does not in any wise conflict therewith. In the opinion I sought to hold that the premium could only be charged once, and that Mrs. Archer could not be required to pay the monthly premiums assessed. My associates were of a different opinion, and held her bound for such payments. The question did not then present itself in the exact form that it does in the present case, or the court would have probably viewed it in the same light.

The question then being whether the association had the right to fix a minimum premium to be paid in installments, the answer was in the affirmative. The present question is, has the association the right to fix a minimum premium at a certain percentage on the amount borrowed payable indefinitely at fixed periods? In other words, under the name of premium to increase the rate of interest? If such is the case the association could not be guilty of taking usury, it matters not how high its rate of interest might be fixed so the word "premium" is substituted for the word "interest." To demand twelve *per centum* interest would be usury, but to demand six per cent. interest and six per cent. premium would not be usury. Such an evasion is too transparent to escape condemnation, and cannot for a moment be upheld. And if there is any language in the *Archer case* that

leads to such a conclusion it is disapproved. A minimum premium may be fixed under the law, but it must be a lump sum certain and definite, which may be paid in advance or in periodical installments. Under the pretence of fixing such premium the legal rate of interest may not be increased indefinitely. To allow such to be the law would permit the association to charge Mrs. Gray both premium and interest until her payment of dues cancelled her indebtedness when she would have paid into the association for the use of eight hundred dollars three times the amount, or·two thousand four hundred dollars, while denied the right to participate in the profits otherwise dissipated. Such a contract is usurious and unconscionable.

The decree is reversed, and the demurrer to the bill is overruled and the cause remanded.

*Reversed.*