# CHARLESTON

Thompson *v.* The National Mutual Building and Loan Association.

Submitted February 21, 1905.   Decided April 11, 1905.

1. Building and Loan Association—*Certainty of Premium.*

Where the minimum premium bid by a borrowing member of a building and loan association is fixed by the charter and by-laws of the association and the bond and deed of trust securing it, in monthly payments for a stated and definite number of years, or until the maturity of the pledged shares, should they mature before the expiration of the years stated, the amount of the premium is sufficiently certain and definite.   (p. 559.)

2. Syllabus Approved.

Syllabus, points 2 and 3, *Toledo Tie and L. Co.* v. *Thomas*, 33 W. Va. 566, approved and reaffirmed.   (p. 557.)

Appeal from Circuit Court, Cabell County.

Bill by Annie B. Thompson against the National Mutual Building & Loan Association and others.   Decree for plaintiff, and defendants appeal.

*Reversed.*

C. R. Wyatt and Brown, Jackson & Knight, for appellants.

Simms & Enslow, for appellee.

McWhorter, Judge:

Annie B. Thompson subscribed twenty shares in the National Mutual Building and Loan Association of New York. On the 12th of January, 1894, she borrowed $2,000, the par value of said shares, and executed to the said association her bond in the penal sum of $4,000, and together with A. M. Thompson, her husband, executed a deed of trust bearing the same date to George J. Peet, trustee, on lots 29 and 30 in block 22, together with the improvements thereon, in Central City, Cabell county, to secure said loan according to the terms and provisions of the said bond and deed of trust and the by-laws of said association, and also assigned to said association her twenty shares of stock.   Said Annie B. Thompson had an insurance policy of $2,000 on the house on said property, in the Norwich Union Fire Insurance Society, which policy contained a provision making the loss, if any,

payable to said building and loan association as its interests might appear. She paid the dues, interest and premium until about July 1897. On the 27th day of January, 1898, the building was destroyed by fire. On the 22d of March following, Annie B. Thompson filed her bill in the circuit court of Cabell county in open court against the said National Mutual Building and Loan Asssociation, George J. Peet, trustee, and the said fire insurance company, alleging that said contract of loan of the $2,000 to her by the said Building and Loan Association was usurious and praying that said association be enjoined from collecting said usury under their said bond and trust deed, and from in any way transferring or disposing of said insurance policy; that the said fire insurance company be enjoined from paying over to said association any amount of money on account of said policy until the true statement of accounts be ascertained between plaintiff and the said association and its rights and interests under said mortgage clause in said insurance policy could be ascertained, and that all matters of difference between the parties might be properly adjusted, and praying that a special receiver be appointed to receive the said $2,000 from the said fire insurance society and to hold said policy and said money until the further order of the court; that a commissioner be appointed to make settlement of plaintiff's accounts with said association, and for general relief.

Plaintiff exhibited with her bill the deed of trust executed by herself and her husband to secure the loan, also her receipt-book showing the payments made by her on dues, premiums and interest, also a paper writing addressed to the defendant association purporting to be an offer to pay said association $1,120 in full of its claim and a demand to it to surrender the policy of insurance; which paper was dated March 14, 1898. On the 23d of March, 1898, the court made an order of injunction according to the prayer of the bill, restraining the payment by the fire insurance society to the said association of said $2,000, or any part of it, and appointed a special receiver to make settlement with the fire insurance society for the loss under the policy and to take charge of the $2,000 and of the said policy and directing the association to turn over said policy to the receiver, and the

fire insurance society to pay over said $2,000 to the said receiver.

The defendants, the National Mutual Building and Loan Association and George J. Peet, tendered their joint and separate demurrer to plaintiff's bill, which was overruled. They then tendered their joint and separate answer which was ordered to be filed. To which plaintiff replied generally. With the answer were exhibited the charter and by-laws of the defendant, and the Acts of the Legislature of New York under which it was organized, the bond for $4,000 executed to it by the plaintiff and her husband, and also the assignment to defendant of her twenty shares of stock. The answer denied all the material allegations of the bill alleging usury in the contract. Upon the filing of the answer the court made an order referring the cause to one of its commissioners to state and report account, showing amount due by the plaintiff, Annie B. Thompson, to the defendant association under the trust deed and any other matters which any of the parties to the cause might require of the commissioner, in writing. Depositions were taken on behalf of the association and filed in the cause, from which it appears that after allowing credit to the plaintiff for the withdrawal value of her stock, as of September 1, 1898, $542.20, there was a balance due on said loan of $2,015.80, as of that date; but if the stock should be continued and held by the said plaintiff the amount due on the loan as of said date was $2,548. The commissioner made his report upon the theory that plaintiff is entitled to the net profits on her stock, being 1-1401 part of the net profits of the association during the time her stock was running, leaving a balance due from plaintiff to the said association of $1,-267.60; the said net profits being $302.40. He then made another statement giving plaintiff credit also for $210.22, being the 1-1401 part of the net reserve fund, which showed a balance due from plaintiff to the association of $1,057.38. He then made, at the instance of the defendant association, a statement showing the amount due as claimed by it, and supported by the depositions, made out according to the contract contained in the bond, deed of trust and by-laws, giving the plaintiff credit with the withdrawal value of the twenty shares of stock, showing a balance due as of September, 1, 1898, of $2,015.60, which sum should bear interest

from September 1, 1898, and to which sum the commissioner added $60.50, interest due up to March 8, 1899, making a net balance at that time of $2,076.30, due the association on the loan.

The defendant association filed five several exceptions to the commissioner's report, excepting to his findings on the several bases stated. The fourth exception being that the commissioner found and reported that there was only the sum of $1,267.60 due upon said loan on the 8th of March, 1899, when the evidence showed that there was due on the first day of September 1898, the sum of $2,548, and a redemption fee of $10, making a total necessary to repay the loan of $2,558, and that the value of the shares that might be credited thereon was $542.20, leaving a balance due on that date of $2,015.80, which should bear interest from the first day of September to the 8th day of March, amounting altogether to $2,076.50, which the commissioner did find to be due thereon according to the evidence and contention of the defendant association, and it further excepted "Because the commissioner makes an alternate finding basing it, as he says, upon the theory of the plaintiff's attorneys in which he makes all the errors and wrongful finding hereinbefore excepted to by the defendant association and in addition thereto finds and reports that the plaintiff is entitled to share in the net total earning of the association between the time she became a stockholder and the time of the loss by fire as aforesaid, and also in the contingent reserve fund when in fact and according to the evidence she is not entitled to have credited on her shares any of the reserve fund as hereinbefore set forth." Plaintiff also filed exceptions numbers one and two. Number one, because the commissioner did not find that plaintiff was entitled to the difference between $2,000, which is amount of the insurance money in the hands of the receiver, and $334.50 which she claimed she still owed on the loan, or $1,665.50 of said insurance money to be decreed to her. Plaintiff's second exception was that if the court should not hold that her first exception was well taken that the commissioner should have treated the whole transaction as a loan of $2,000; that the association was shown not to have complied with the laws of the State of West Virginia, in making said loan and was not entitled to receive any pre-

mium on account of said loan, but the contract should be settled by charging plaintiff with $2,000 and six per cent. interest up to the date of the payment by the insurance company of the money into the hands of the receiver and credit her with the entire amount of the interest, premium, dues and fines paid, which amounts to $———, "leaving the account stand as follows:

| | | |
|---|---|---|
| Loan...... | $2,000.00 | |
| Interest to the date of the appointment of the receiver at six per cent...... ...... | 505.00 | —$2,505.00 |
| Cr. | | |
| With interest on average payments of premium, interest and dues, & Int. on same, $1,376. Fine $6.00, total $1,382 & Int. $175.00...... | 1,557.00 | |
| Balance due the association...... | $ 948.00 | |

Deducting the same from the $2,000.00 in the hands of the receiver leaves $948.00 due the association, and she prays that in case the court should be of the opinion that she is not entitled to share in the reserve fund and earnings of the said association, that then she should be settled with as set out in the second exception and she be allowed to discharge her loan by the payment of the said sum of $948.00 and the report be corrected.   A. B. Thompson, by Simms & Enslow, Attorneys."

The cause was brought on to be heard on the 16th day of July, 1901, "And the court having maturely considered the question raised in the said cause, is of the opinion that the contract between The National Mutual Building & Loan Association and the plaintiff, Annie B. Thompson, is governed by the laws of the State of West Virginia, and that as the said defendant had not complied with the requirements of the statute in West Virginia governing loans made by Building and Loan Associations it is not entitled to have the same treated as a Building and Loan Association loan, but only as a straight loan of $2,000 and was only entitled to be paid its money with six per cent. interest, and that all payments made by the said plaintiff, whether of dues, premium or interest or fines, be credited upon the said loan, and that the said plaintiff should not share in the reserve fund or profits of said association, and that the said contract was terminated and the loan became payable at the time of the payment of the insurance money in this case into the hands of the

receiver, and that period should be taken and held as the time of settling the accounts between the said parties. And the court being of the further opinion that the plaintiff's exception No. 1 to the commissioner's report and the defendant's exceptions to the said commissioner's report, are not well taken, it is adjudged, ordered and decreed that they be, and they are hereby, overruled. But the court being further of the opinion that the plaintiff's exception No. 2 is well taken and that the commissioner's report should, to the extent of such exceptions, be modified, it is, therefore, ordered that the said plaintiff's exceptions No. 2 be, and they are hereby, sustained, and the court now proceeding to adjudicate said cause, it is adjudged, ordered and decreed that the said plaintiff is entitled to credit for all payments made by her upon said loan, including dues, interest, premium and fines, and that the defendant, The National Mutual Building and Loan Association, is entitled to recover from the said Annie B. Thompson said sum of $2,000.00 with interest from January 12, 1894, the date of the loan, until March 23, 1898, the date of the appointment of the receiver herein and the payment to him of the money due on the fire insurance policy and that the amount due to the said The National Mutual Building and Loan Association, after deducting the dues of $516.00 from Jany. 1894, to July, 1897, $430.00 interest paid monthly, from January, 1894, to July, 1897, $430.00 premiums paid monthly from January, 1894, to July, 1897, with $6.00 fines paid by the said A. B. Thompson, leaves a balance due the said association of $948.00 which it is entitled to receive out of the sum of $2,000.00 in the hands of the said receiver herein, with interest from this date." And decreed that plaintiff recover her costs against the said Building and Loan Association and that F. B. Enslow, special receiver, out of the $948 adjudged to the association, pay, first, the costs of the suit, including a commission of five per cent. to the special receiver and the remainder of said $948 after paying said costs pay over to the said association, and that he pay to the attorneys of plaintiff $1,052, the amount due her out of the $2,000 in the receiver's hands. From which decree the Building and Loan Association appealed.

The only real question to be decided in this cause is that

of usury. It appears from the record that the defendant is a Building and Loan Association organized under the laws of the State of New York, and its charter and by-laws clearly bring it within the restrictions and provisions of the laws of the State of West Virginia, concerning building and loan associations. It is insisted by counsel for plaintiff that when it made the contract with the plaintiff it had not complied with the laws of the State of West Virginia to enable it to do business therein, and therefore it could not make a contract as a Building and Loan Asssociation, and the court held in its decree to that effect, holding that the contract of the loan was governed by the laws of the State of West Virginia and that as the defendant had not complied with the require-ments of the statute governing loans made by Building and Loan Associations it was not entitled to be treated as a Building and Loan Association loan, but only a straight loan of $2,000 and was only entitled to be paid its money with six per cent. interest, and that all payments made by the plaintiff, whether dues, premium or interest or fines be credited on the said loan. The bill alleges want of compliance with the statutes of this State on the part of the defendant Association, which is denied by the Association, and it avers in its answer that it had fully complied in every particular therewith. There was a general replication to the answer whereby the *onus* was thrown upon the defendant to show that it had complied with the statute, but it does not appear to have filed any proofs of having complied with section 30, chapter 54, Code. However, that does not invalidate its con-tracts, it only renders the association liable to the penalties prescribed for failure to comply. In *The Company* v. *Thomas*, 33 W. Va. 566, syl. pts. 2 and 3 are as follows: "2. A contract made by a foreign corporation before it has com-plied with the statutory prerequisites to the right to do business in another state will not, on that account, be held absolutely void, unless the statute expressly so declares; and if the statute imposes a penalty upon the corporation for failing to comply with such prerequisites, such penalty will be deemed exclusive of any others." "3. Our statute—sec-tion 30, chapter 54, Code—which prescribes, that foreign corporations shall comply with certain regulations as a pre-requisite to their right to hold property or do business in

this State, and fixed a penalty for their failure to do so, does not make the contracts made in this State by such corporations before compliance with said regulations absolutely void and unenforceable in the courts of this State." See also, *Ober* v. *Stephens*, 54 W. Va. 354, (46 S. E. 195), where this question is discussed. Section 30, of chapter 54, Code, applies as well to Building and Loan Associations as any other corporations and to entitle them to do business in this State it is their duty to comply with the provisions of that section, and when so complied with they are relieved from the penalties therein provided, but as we have seen their contracts are not void, but are held to be valid and binding. I think the test in this case, is, would the contract be sustained if made by a domestic Building and Loan Association? By the contract, of course, is meant the bond and trust deed and charter and by-laws in regard to the payment of premium upon the loan. The by-laws of the defendant association, article 12, section 2, provides: "Interest at the rate of not more than six per cent. per annum will be charged upon all loans, which interest must be paid monthly, with the monthly dues, on or before the last business day of each month until the maturity of the pledged shares, and a premium of not more than fifty cents per month will be charged on each one hundred dollars borrowed, which premium must be paid on or before the last business day of each month, for a period of eight years, or until the maturity of the pledged shares, should they mature before the expiration of the eight years. The premium for the first six months to be paid in advance." And the bond and deed of trust are made to conform to this provision of the by-laws. In the bond it is provided that the obligor shall pay "On or before the last business day of each and every month thereafter, the sum of $10 for premium, $10 for interest, and $12 for dues on the said shares until maturity of the said shares in accordance with the articles of association of the said obligee; which premium is however, to be paid for eight years only, or until the earlier maturity of said shares." And in the deed of trust it is provided "Which premium is, however, to be paid for eight years only, or until the earlier maturity of said shares." So that it is distinctly provided that in no event shall the premium be paid longer than eight years. Here we have a definite

fixed sum (lump sum) of $960 divided into monthly payments of $10 each. In *Gray* v. *Building and Loan Association*, 48 W. Va. 164, (37 S. E. 535), syl. pt. 1: "While a Building and Loan Association may fix a minimum premium payable in advance, or in periodical instalments, such premium must be a lump sum, certain and definite, and not a per centage payable indefinitely at fixed periods," and point 2, "A per centage payable indefinitely and at fixed periods is interest and although it be called 'premium' and is in addition to the legal rate of interest already charged, it is usurious and should be expunged from the account." The case just cited, also that of *Archer* v. *Same defendant*, 45 W. Va. 37, (30 S. E. 241), and *Floyd* v. *National Loan and Investment Company*, 49 W. Va. 327, (38 S. E. 655), are referred to in *Prince* v. *Holstein National Building and Loan Association*, 46 S. E. 708, where it is said: "It is held that the minimum premium 'must be a lump sum, certain and definite and not a per centage payable indefinitely at fixed periods'." It is so held because in the contracts there under consideration, there was no definite time fixed at which the monthly payments of premium should cease and beyond which further payments should not be collected, hence the whole amount of the premium was not and could not be fixed definite and certain; but where it is provided that the monthly premiums of a specified amount of each monthly or periodical payment shall continue not exceeding a given number of months, it is rendered certain and definite because it cannot go beyond the number of months designated, and if it should cease by reason of maturity of the stock and the consequent payment of the loan in a shorter time, surely the borrower could not complain. Counsel for appellee in case at bar certainly misapprehend the ruling of this Court in the case of *Floyd* v. *National Loan and Investment Company*, when he says the decree complained of in case at bar is undoubtedly in all respects governed by the *Floyd Case*, just cited. That was a case in which the National Loan and Investment Company was attempting to enforce a contract of the same vicious character as that of the Baltimore Building and Loan Association, in the *Gray* and *Archer Cases* and not being such a contract as could have been enforced by a domestic association it was not permitted to be enforced. The fact that the

premium was required to be paid monthly until the maturity of the stock on which the loan was made, the time of the continuing payments of premium was rendered entirely uncertain and hence the company was not permitted to enforce the contract, which was justly held to be usurious. The premium provided by the contract in case at bar is sufficiently certain and definite, and it is therefore not usurious and the court erred in not enforcing the terms of the contract as a building and loan association contract.

The exceptions one, two, three and five of the defendant association to the report of the commissioner should have been sustained and also exception four, in so far as the exception to the amount found by the report in favor of the association to be $1,267.60 on the 8th day of March, 1899, should be sustained. As to the residue of said exceptions claiming that "The evidence shows that there was due thereon, on the first day of September, 1898, the sum of $2,548 and redemption fee of $10; making a total necessary to repay the loan of $2,558, and that the value of the shares that may be credited thereon was $542.20, leaving a balance due on that date of $2,015.80 which bears interest from the first day of September to the 8th day of March, amounting altogether to $2,076.60, which said last sum, however, the commissioner does not find to be due thereon according to the evidence and contention of defendant association;" the same should be, with the cause, referred back to a commissioner to ascertain from the evidence in the cause the actual amount of fines properly assessable and not paid from January, 1894, to September 1, 1898, and interest, premium and dues not paid by the plaintiff up to the same date, which several amounts to be added to the principal of the loan to be reduced by the sum of $542.20, the withdrawal value of the shares of stock, will be the true amount of the decree to be rendered in favor of the defendant association, and the exceptions of plaintiff to the commissioner's report should have been overruled.

The decree of the circuit court of Cabell county is therefore set aside, reversed and annulled and the cause remanded to said court with directions to enter a decree ascertaining and fixing the amount due the defendant association according to the terms of the contract of loan as a Building and

Loan Association contract, and to cause the funds paid into the hands of the special receiver by the insurance company in this cause, to be applied on account of such decree in favor of the National Mutual Building and Loan Association, and for such further proceedings as may be proper in the premises and not inconsistent herewith.

*Reversed.*