# CHARLESTON

TAHANEY *v.* BUILDING ASSOCIATION.

Submitted January 23, 1906.    Decided March 13, 1906.

1. BUILDING AND LOAN ASSOCIATION---*Contract of Loan---Usury.*

A contract of loan with a building association, without naming a lump sum of premiums, provides that monthly premiums of fixed sum shall be paid for a fixed number of months. This fixes the amount and duration of payment of premiums with certainty, and the contract is not open to the charge of usury.   (p. 298.)

2. SAME---*Usury.*

A contract of loan with a building association requires continuance of payment of lawful interest on the sum advanced, after cessation of dues and premiums, until the stock matures, unless it sooner matures. This does not make the contract usurious.   (p. 299.)

3. SAME---*Competitive Bid.*

When an application for a loan on stock by a building association makes a bid of premium and it is accepted, and the deed of trust securing it states that a certain premium was bid for the advance, the loan is not illegal as not being a competitive bid.   (p. 299.)

Appeal from Circuit Court, Tucker County.

Bill by Mary A. Tahaney against the Washington National Building & Loan Association and others. Decree for complainant, and defendant loan association appeals.

*Reversed.*

FORREST W. BROWN, for appellant.

J. P. SCOTT, for appellee.

BRANNON, JUDGE:

Mary A. Tahaney subscribed for five shares of installment stock in the Washington National Building and Loan Association, a Virginia corporation, requiring payment of sixty cents per month per share for ninety-six months, unless the stock matured earlier.   After so subscribing for stock, she obtained from the corporation an advance of $500.00 on her stock, she giving a bond with condition to pay dues, interest and premiums, secured by a deed of trust on real estate in Tucker county.   This trust required payment of sixty cents per share of stock monthly, and interest on the $500.00 at

fifty cents per share of stock monthly, and also a monthly premium of fifty cents per share for the first year, and for each succeeding year a monthly premium of ten per cent thereof less than the preceding year, that being the premium bid for the advancement, and such fines, charges and assessments as might be imposed under the charter, by-laws and regulations until such time as the shares should be paid up, "with the proviso that no payment on account of stock or premium shall be exacted for a longer period than ninety-six months from the date of said stock, but should said shares of stock fail to mature on or before the expiration of said period of ninety-six months then six per cent per annum on the original amount advanced thereon shall continue and be paid in monthly installments until said stock shall mature, when all payments shall cease and the deed of trust securing said bond be cancelled." Thus payment of dues and premiums stopped after eight years. Mrs. Tahaney paid for some years money to the association according to contract, and then ceased, and filed a bill in equity claiming that she had paid $489.61, with interest from 1st February, 1896, the date of the advance of money on her stock, and owed only a balance of $10.39; but that the association claimed an indebtedness against her of $335.00. She asserts that the contract is usurious, and that it should be held as a straight loan of $500.00, and that all her payments, including premiums, should be applied as partial payments, and not treated as premiums under the bond and trust. She prayed that an account be had of her debt by purging the contract of usury, and for a decree on that basis. A decree was pronounced in accordance with the claim of Mrs. Tahaney finding her balance $35.43, whereas the commissioner's report, under the claim of the association, showed a balance of $335.62. The association appealed.

It is conceded that this association had complied with the requirements of section 30, chapter 54 of our Code, and was authorized to do business in this State, and was possessed of the same right to contract as a domestic building association. It may therefore contract for premiums without impeachment of usury, if such premiums be payable as dictated by law, as section 26, chapter 54, Code, exempts a building association from the imputation of usury.

This contract is claimed to be usurious in that no lump sum

is fixed.   It is admitted that there may be by section 26 min-umum premium payable either in advance or in periodical installments, but it is claimed that there must be a lump sum fixed.   Why?   Do not periodical monthly sums of fixed amount for a fixed number of months make up a lump sum? Such a process is the same as if a lump sum were fixed.   It is mathematically certain.   Our cases interpret section 26, chapter 54, Code 1899, as demanding that the extent of pay-ment of premiums be definite, and to answer that demand there must be a lump sum, but that it may be taken out of the advance in advance, or be distributed in stated periodical payments; but such lump sum need not in words be specified, and then distributed, because if the periodical payments be fixed in amount and number they make up a lump sum.   The case of *Gray* v. *Baltimore, etc.*, 48 W. Va. 164, does not contravene this.   It only means that the sum to be paid for premiums be definite—that is, capable of being known, not running indefinitely, and that if it is indefinite, the contract is open to charge of usury.   A simple calculation tells what the premiums in this instance come to.   They can run only eight years, and are of fixed monthly amounts.   They are en-tirely consistent with the *Graves* case.   The same may be said of *Floyd* v. *Loan Association*, 49 W. Va. 327; *McConnell* v. *Cox*, 50 *Id.* 469, and *Prince* v. *Building Association*, 55 *Id.* 19.   They do say that there must be a "lump" sum, certain and definite, not percentage payable *indefinitely* at fixed per-iods; but they recognize right to periodical payments.   The by-laws of this company provide for stated payments.   It is a mere play on words to say that where the premiums are not to be paid in advance, but in periodical certain sums, the calculation must be made of what total· or lump sum the pay-ment aggregated and insert it in the papers.   Would it make the party pay any more or any less?   Does he not know just what he has to pay?   The trouble with the contracts in the cases just named was that no lump sum was named, nor were there periodical payments fixed in amount and number.   But all disputation as to this is foreclosed by the late case of *Thompson* v. *National· Mutual Building Association*,(50 S. E. 756), 57 W. Va. 551.  It says that where the contract calls for "monthly payments for a stated and definite number of years, or until the maturity of the shares, should they mature

before the close of the years stated, the amount of the premium is sufficiently certain and definite," and the contract as written is valid. That case is consistent with former cases, and rules the case we have in hand. It would answer no purpose to go over the ground again in this case. And *Archer* v. *Baltimore B. and L.*, 45 W. Va. 37, does not in words call for a lump sum, but allows periodical payments.

Counsel says that our statute contemplates that the by-laws fix a minumum premium, but in this case it is a maximum. The by-laws fix a premium of fifty cents. If Mrs. Tahaney bid with competitors, she could not get a less premium, but might pay more. How is she thus injured? Counsel cannot mean that a maximum and minimum must be put in the contract. That would make it uncertain. The statute does not mean this, but that the by-laws fix a minimum. The papers prove that Mrs. Tahaney got the loan by bidding; but say that the loan was awarded her as the value of her shares in default of bidders. We may presume so. She elected so to take. And she is not hurt as she got the minimum. The by-laws provide for such competitive bidding, and her application for the advance stated her bid, and the deed of trust says her bid was as above stated.

But it is contended that the contract is tainted with usury because it provides that if the shares of stock should not mature in eight years, then six per cent. interest of the original amount of the loan should continue until the stock should mature. This is no usury. It is interest only on the actual money received by the borrower until the debt shall be discharged by the maturity of the stock. We must not fail to remember that interest is one thing, its purpose being to keep down lawful interest while the stock is maturing from dues, premiums and dividends. Premiums and dues are different things from interest, their office being to mature the stock, which, when mature, pays the principal of the debt.

Endlich on Building Associations, § 409, is cited to show that a loan can only be by competition for the loan; but our statute says it may be otherwise in default of bidders, and we have right to say this was the condition, though the papers say Mrs. Tahaney got the advancement by bid. It seems, too, from the books that the requirement of competitive bidding has the purpose of enabling the borrower to get as low

a premium as he can. If the loan is governed by a fixed premium, he cannot get it lower. Endlich on Building Associations, § 410. But our statute expressly gives power to fix a minimum. And it forbids a loan by open bidding at less than the premium, since if no one bids it, the association may award the money, without bidding to a shareholder to the value of his stock at that premium. We do not see any force in this view of competitive bids. It would seem to be required, under our statute for the mutual benefit of members, for the association, not the borrower.

Brief of counsel enters into argument to show that this association by reason of want of mutuality and other features is not a building and loan association, meaning, as I understand, that it is not entitled to contract as such. It has West Virginia authority as such. It is a corporation under the law of Virginia, and accredited as such in this State. Can its powers be thus collaterally attacked, when neither state contests? And, again, after Mrs. Tahaney, by her deed, has contracted with it as such corporation, she cannot deny its corporate existence. *Singer Co.* v. *Bennett*, 28 W. Va. 16.

An impression is abroad that a loan by a building association is nothing but a simple loan at six per cent interest, with right to apply all money paid for interest, dues and premiums as partial payments. Under that impression likely Mrs. Tahaney ceased payments, and disaster followed, whereas, if she had gone on, her debt would likely have been paid by her stock. If members do not pay according to contract the whole plan or nature and object of the contract must be defeated. These associations were authorized in order that poor persons by sobriety, energy and frugality might get homes and be lords of their castles by small payments from time to time; but if members do not conform to the requirements the project fails them. Courts cannot overthrow valid contracts. The Legislature has made these contracts, conforming to legal regulation, valid, and whether the moneys paid exceed legal interest or not, and though they do, the Legislature, to attain the purpose of such institutions, has said that these contracts shall not be subject to the defense of usury.

We therefore reverse that part or provision of the decree of 10th June, 1905, fixing the debt of the Washington Na-

tional Building and Loan Association at $35.43, and it is adjudged, ordered and decreed that the debt of said association, in the record specified, constituting the first lien in order upon lot No. 16 in said decree mentioned, is $355.62, with interest from the 7th day of March, 1905, and that said decree be modified accordingly.

*Reversed.*