# CHARLESTON

IRVING v. IRON BELT BUILDING & LOAN ASSOCIATION *et al.*

Submitted October 18, 1906.    Decided January 21, 1908.

1. BUILDING AND LOAN ASSOCIATIONS—*Premiums—Competitive Bidding.*
    Premium or profit for the use of an advance or loan by a building and loan association to a member thereof must, under the laws of this state, be fixed by competitive bidding for priority of right to the mutual funds, or, in default of bidders at or above a minimum premium fixed in the by-laws, by awarding the money to a member at such minimum premium. (pp. 356, 357.)

2. SAME—*Usury.*
    When such premium is fixed by any other method than that prescribed by our statute and is greater than the legal rate of interest, the contract respecting the advance is usurious, and, to the extent of such usury, cannot be enforced in the courts of this state. (p. 357.)

3. SAME.

A building and loan association contract requiring payment of a fixed monthly premium for an indefinite period of time is usurious.  (p. 357.)

4. SAME.

The by-laws of a foreign building and loan association, doing business in this state, contain no provision for competitive bidding or for a minimum premium in default of bidders, but provide that a borrowing stockholder in addition to six per cent interest on the money actually loaned shall pay a fixed premium of $50 per share, or at the time of the advance may obtain from the association and use therefor "special advance stock" equal to one half the number of shares necessary to carry the advance, which special stock shall mature at the same time as his regular stock but be not subject to membership fees or expenses, and which on repayment of the loan shall be forfeited to the association, the borrower then receiving only his original stock.  *Held:* That a contract for an advance of $1500 on fifteen shares of regular and fifteen shares of special advance stock in lieu of such fixed premium, with a stockholder in this state, the bond and deed of trust providing for monthly payments of $24 each, of which $9 is for dues on regular stock, $7.50 for dues on special advance stock and $7.50 for interest, to be continued until such time as such stock shall be matured, is usurious, and enforcible only as a simple loan of money at legal interest.  (p. 357, 358.)

5. SAME—*Foreign Association.*

A foreign building and loan association, coming into this state to transact business, must conform to our law regulating similar corporations organized under the law of this state; and its contract, although in terms solvable at its domicile in the foreign state, must be such as a similar domestic corporation is authorized to make, in order to be enforced in this state.  (p. 358.)

Appeal from Circuit Court, Kanawha County.

Bill by A. H. Irving against the Iron Belt Building & Loan Association and others.  Decree for plaintiff, and defendant association appeals.

*Affirmed.*

BROWN, JACKSON & KNIGHT and C. A. McHUGH, for appellants.

AVIS, JORDAN & HARDY, for appellee.

MILLER, JUDGE:

This is another of the numerous cases, calling for construction of the contracts by foreign building associations with citi-

zens of this state, which have been before us in recent years. The main question in all of them has been whether the character of the contract, providing for a premium above the legal rate of interest, has rendered it usurious as a building association contract. Many of them have been held usurious and enforcible only as simple loans. The last of these cases is *Miller* v. *Banking & Trust Co.*, decided at the last term, wherein the principal point of adjudication was that such premium must under our law be determined by competitive bidding, or, by the minimum premium fixed in the by-laws in default of bidders at or above the same, and that a premium arbitrarily fixed by a foreign or domestic association renders the contract usurious when stipulated for respecting an advance or loan. The contract here involved falls within the condemnation of that case, as well as of many of the others referred to.

The plaintiff is a citizen of Kanawha county; the defendant a corporation under the laws of Virginia, with principal office at Roanoke and authority under its charter and by-laws to transact business anywhere in the United States. The by-laws in force at the time of said loan contained, among others, the following provisions:

"Article III. * * * Section 8. Special advance stock may be issued to any member at the time of making an advance, to be used ,therefor, to an amount equal to one half of the number of shares requisite to carry such an advance."

"Article VIII. Section 1. Applications for advances or for loans must be made to the board of directors at the central office, on the blanks of the association provided for that purpose, and give full answers to the several questions there set down. Applications must be first approved by the proper officers of the local board, and be forwarded by the secretary thereof."

"Sec. 3. * * * The rate of interest shall be six per cent per annum on the amount actually loaned, payable monthly. The premium charged for advances shall be $50.00 per share. But any member desiring to obtain an advance shall be entitled at the time such advance is made to obtain from the association and use therefor an issue of special advance stock equal to one half of the number of shares necessary to carry such advance. This stock shall be issued and shall mature as of

even date with the stock it is issued to increase, and shall not be subject to membership fees or to contribution to the expense fund. In case the member availing himself of this provision should at any time elect to repay such advance, such special advance stock shall be forfeited to the association; and the member shall receive from the association only his or her original stock in aid of which such special advance stock was issued. Any member may apply for an advance ninety days after the date of his or her certificate, and if the application is approved the member will be served in turn according to the date of his or her application, within the discretion of the board of directors."

"Article X., *Local Branches*. Sec. 1. Local branches may, for the convenience of the association, be established in any town by the members resident there. The local branches may elect a president, vice-president, secretary, treasurer and local attorney, who shall hold office for one year and until their successors shall have been elected. But such selection of the local attorney shall be subject to the approval of the directors of the central board, and shall be removable at their pleasure.

"Sec. 2. It shall be the duty of the local board to pass upon all applications for advances before the same are forwarded to the central office, and in all practical ways to protect the interest of the association in their localities.

"Sec. 3. Members may make their payments to the treasurer of the local branch at the place of local residence, but such treasurer will be deemed the agent of the member and not of the association.

"Sec. 4. The central office shall issue a charter to any local branch duly organized. Pending organization of the board the soliciting agent may appoint temporary officers for the association, who shall act only until the first meeting of the stockholders, when the members shall confirm their appointment or elect other officers in their stead."

"Article XI. *Soliciting Agents*. All soliciting agents of this association shall have commissions under the seal of the association, signed by the president and manager of agencies. Their authority shall be limited to the establishing of local branches, taking applications for stock and collecting one

dollar per share, being the admission fee and first month's dues on stock."

Article XII furthermore provides for visiting, by the manager of agencies or some special agent, of each local branch, to make examinations of the books and accounts of the local secretary and treasurer and local agent, and the manner in which the affairs of the association are there conducted, with power in such visiting agent to call meetings of the stockholders of such branch, and make written report to them for their information and guidance; and the general office is authorized to remove the secretary and treasurer of the local branch or revoke its charter;—all showing that the plan of doing business in other states was through local boards or agencies.

As relating to the subject of the so-called special advance stock and the priority of right in making loans, the new charter of 1896, procured by the association after the loan here involved was made, provided "that all of its acts heretofore done within the scope of this charter are hereby confirmed and validated;" that "the company may upon special terms and conditions, and subject to the rules and regulations established by the by-laws, issue to its members obtaining an advance additional shares of stock not subject to contribution to the expense fund, and not to exceed one half in number the total number of shares necessary to the advance in any case, ** and shall further have power to establish rules governing the priority of right to such loans or advance among the applicants therefor, and the mode of making an award, and the rate of premium (in addition to the interest hereinbefore provided for) to be charged therefor, and whether such premium shall be fixed and uniform or subject to competition for priority among the members, and whether such premium shall be deducted in advance or paid in periodical installments."

The defendant association qualified to do business in this state, by filing its charter, etc., as required by our statute. The plaintiff became a member of the association in November, 1895, through the Charleston local board and solicitor, by subscribing for fifteen shares of its stock. In March following, through the same local authorities, he applied for and obtained a loan or advance of $1500, when, as a condi-

tion of obtaining the same, he subscribed for fifteen shares of the so-called special advance stock, executed a bond, a deed of trust on his real estate, and an assignment to the association of his fifteen shares of original and fifteen shares of special advance stock. The certificate for said special advance stock was, according to its provisions, issued to and accepted by defendant, among others, upon the following terms and conditions:

"1st. The holder of this certificate agrees to pay to the association, in addition to the payment on the stock in aid of which this scrip is issued, 50 cents per month for each share held until said shares mature or are surrendered on repayment of the advance.

"2nd. All moneys due from the stockholder to the association, and due from the association to the stockholder, shall be due and payable at the central office, Roanoke, Va.; provided, however, that payments may be made to the treasurer of a local board by the members resident where such board is located, for transmission to the central office. In such case, the treasurer of the local board will be deemed the agent of such local members and not of the association, and payments will only be credited when received at the central office.

"4th. A fine of ten cents per share for each month's arrearage will be imposed in all cases of non-payment of monthly payments when due.

"5th. Special advance stock is issued only to members of the association in good standing desiring an advance, at the time the advance is made. It is not assignable, except that with the approval of the directors it may be assigned to the grantee or transferee of the property held as security for the advance, where such transferee or grantee has also acquired by assignment the stock in aid of which such special advance stock was issued.

"6th. After 30 days' notice the member may repay an advance in whole or in part, but no part payment will be allowed except in the sum of $100 or some multiple thereof. In such case there will be issued to the member one share of stock, of even date with his or her original scrip, for each $100 so repaid, and said original scrip and the special advance scrip issued in aid thereof shall

thereupon be each diminished one share for each new share so issued."

Said bond, in the penality of $3,000, was conditioned to "well and truly, in the manner prescribed by its charter, constitution and by-laws, pay to the said association, until such time as the shares of stock hereinafter referred to shall be fully paid up, monthly installments of $24 each (of which the sum of $9 per month is for dues on original shares, $7.50 is for dues on special advance stock, and $7.50 is for interest) from the 1st day of March, 1896, in consideration of the sum of $1,500 advanced to him by said association for the redemption of 30 shares of stock thereof, and shall, in accordance with the said charter, constitution and by-laws, during that time pay all fines and charges, and shall faithfully perform all other obligations to the said association, as provided and imposed by and in pursuance of said charter, constitution and by-laws, and any amendment thereto." Said deed of trust, after reciting the condition of said bond and after conveyance of the property described, among other things provided: "If default be made in the payment of dues and interest, or in any of the promises, stipulations and conditions in said bond or in this deed contained, and such default continue for a period of six months, then at the option of said association the whole indebtedness evidenced by said bond (including any taxes, assessments and insurance premiums due or paid by said association) shall at once become due and payable, and the said trustees * * * shall sell the property hereby conveyed * * * for cash as to so much of the purchase money as may be necessary to pay the expenses of executing this trust and the amount then due and payable on account of said bond (including any taxes, assessments and insurance premiums due or paid by said association), and, as to the residue of the purchase money, upon such terms as to cash or credit as the said association may determine, * * * and, after paying the debt or obligation evidenced by said bond and this deed, the balance if any shall be paid to the said A. H. Irving, his heirs, personal representatives or assigns."

After a time, plaintiff having defaulted in his payments, the trustees, as required by the association, advertised his

property to be sold June 3, 1901, to enjoin which, and for an accounting on the basis of a straight loan at six per cent and for general relief, the present bill was filed—alleging the contract usurious and therefore not enforcible as a building association contract; that its plan of doing business, the form and nature of the contract, and particularly the provisions relating to said special advance stock, constituted a mere shift or device on the part of the association for avoiding the usury laws of this state; that said association had never adopted by-laws embracing all provisions of sections 25-28, chapter 54, Code, but on the contrary had adopted by-laws entirely inconsistent therewith. The answer of the defendant does not deny the material facts alleged in regard to the form of the transaction, but denies the usurious effect thereof, claiming that the provisions respecting the special advance stock covered a definite and fixed minimum premium payable in installments, not repugnant to but in harmony with the laws of this state. Upon final hearing in the court below, the preliminary injunction restraining sale by the trustees was made perpetual, said contract adjudged usurious and enforcible only as a simple loan, all sums paid by way of dues, interest and fines to be treated as partial payment; on which basis the amount thereon being agreed, the court adjudged due from plaintiff to defendant $1,247.27, and gave a decree against him therefor with interest. From this decree the association has appealed.

The conclusions to which we have come render unnecessary consideration of the question presented respecting the notice of sale and service thereof. Aside from that question, it is conceded by both sides that the only other question involved is that of usury, but which involves, as claimed by the defendant, a question of the constitutionality of our statutes applicable to the contract of plaintiff with the association as a citizen of Virginia.

It is conceded that no by-laws of said association were ever adopted embracing any of the provisions of sections 25-28, chapter 54, Code; nor do the by-laws contain any provision under which by competitive bidding the borrowing stockholders may determine for themselves the premium they shall pay for the priority in obtaining loans, or under which they may, in default of bidders, obtain loans

at a minimum premium fixed in the by-laws. On the contrary, the by-laws fix an arbitrary and uniform premium, applicable in all cases, of $50 per share, and if their applications are approved the borrowing members are, in the discretion of the board of directors, served in order according to the date of their applications. Such a premium is not in any sense the minimum one contemplated by our statute. Such minimum premium is that at which, in default of competitive bidders, borrowers may take the money in the treasury. It is true the same section of the by-laws gives a borrowing stockholder the option of obtaining from it and using therefor an issue of so-called special advance stock equal to one half the number of shares necessary to carry such advance, such stock to mature of even date with the stock it is issued to increase, but not subject to membership fees or contribution to the expense fund. But what part is it provided this special stock shall perform in the economy and execution of the contract? If the borrower elects to repay his loan before maturity of his stock, the special advance stock becomes forfeited to the association, the member receiving only his original stock in aid of which the former was issued; or, in case he desires to repay only in part, which he can only do in multiples of $100 or at the par value of his shares, a certificate for one share of stock is issued to him for each one hundred dollars repaid, corresponding in date to his original certificate, but his special advance stock is diminished "one share for each new share so issued." Such special advance stock is not assignable, except with approval of the directors to a grantee or transferee of the property held as security for the advance who has also acquired by assignment the stock in aid of which such special advance stock was issued.

Neither the bond nor the deed of trust here fix any gross premium to be deducted in the beginning or paid in periodical installments. But it is argued that the fifteen shares of special advance stock, the ultimate value of which is $1,500, substituted for payment in advance of the $50 per share, the arbitrary premium fixed in the by-laws, is that fixed premium, and that the monthly installments of dues of $7.50 are equivalent to monthly installments of premium

thus provided, which, together with the prospective profits thereon added, will ultimately equal the premium represented by the par value of such stock.   But the trouble with the argument is that there is no fixed time when these monthly payments shall cease; the time is indefinite—terminable only at some indefinite time when the payments made and the possible profits on both classes of stock will together amount to the par value of the stock.   Such plainly is not the fixed amount of premium payable in installments contemplated by our law.   Stripped of this mask, the transaction amounts simply to a loan of $1,500, with interest at six per cent per annum payable monthly in installments of $7.50, and premium at the same rate payable in like installments until the loan is repaid or the original stock is matured and the loan repaid thereby, the latter of which events may, for want of profits, never happen, and in any event will be of very uncertain consummation.   Such being the character of the premium involved in this case, it is not within the rule of fixed amount and duration of payment declared valid in *Thompson* v. *Association,* 57 W. Va. 551; *Burkheimer* v. *Association,* 59 W. Va. 209; *Tuhaney* v. *Association,* 59 W. Va. 296; *Brown* v. *Rockey,* 60 W. Va. 268.   But it falls within the rule and condemnation of fixed monthly premium for an indefinite period, pronounced in *Gray* v. *Association,* 48 W. Va. 164; *Floyd* v. *Association,* 49 W. Va. 327; *McConnell* v. *Cox,* 50 W. Va. 469; *Prince* v. *Association,* 55 W. Va. 19; *Harper* v. *Association,* 55 W. Va. 149; *Miller* v. *Association,* 57 W. Va. 437.   The cases just referred to fully cover every question presented respecting the usurious character of the contract here involved, and fully justify our conclusion in the premises, rendering unnecessary further discussion thereof, which would be useless repetition.   Our conclusion is that the contract involved was in form and character usurious, and therefore enforcible only as a simple loan at the legal rate of interest.

But it is claimed the contract was made with reference to the laws of Virginia, under which it was valid and binding; and reference is made to section 2, Art. V of the by-laws, providing that "all money due from members to the association or from it to members shall be payable at the central

office in Roanoke, Va.," and also to a similar provision of the bond and certificate of stock; and, because of these provisions, the argument is made that the contract should be governed by the laws of Virginia, the place of performance. Other provisions of the charter and by-laws, however, contemplate doing business in other states and establishment of local boards and agencies there for that purpose; and the contract in this particular case, after qualification of the association to do business here, was made and to be performed here through a local board and agency. This question is fully covered and decided adversely to appellant's contention in *Floyd* v. *Association, supra,* with special reference to the inhibitions, restrictions and conditions imposed on foreign corporations doing business in this state by section 30, chapter 54, Code. The authorities cited by appellant's counsel do not deny, but affirm, the right of a state to enact and enforce such legislation—among them *Allgeyer* v. *Lousiana,* 165 U. S. 578, and *Bedford* v. *Association,* 181 U. S. 227. The argument for freedom of contract under the fourteenth amendment of the federal constitution, based on these two federal cases, is equally unsound. The question here is of the right of a foreign corporation to come into this state and attempt to do business here contrary to our laws, and to exercise rights and enter into contracts not permitted to like corporations of this state. The cases referred to deny to such corporation any such rights.

We therefore affirm the decree below.

*Affirmed.*